[Civ. No. 2601. Third Appellate District.—April 16, 1923.]

JOSEPH FREDERICK THOMPSON LAUGHTON, Appellant, v. WILLIAM McDONALD et al., Respondents.

[1] SPECIFIC PERFORMANCE—VERBAL CONTRACT OF SALE—STATUTE OF FRAUDS.—One who enters into possession of real property under a verbal agreement of sale and who makes valuable improvements thereon, and particularly if he pays the purchase price, is entitled to have the contract enforced, and the statute of frauds does not apply to such a case.

[2] ID.—EJECTMENT—EVIDENCE—APPLICATION OF PRINCIPLE.—In this action by an alleged innocent purchaser to recover the possession

---

1. Oral contract for purchase of land as defense to action of ejectment against vendee in possession, note, Ann. Cas. 1912A, 566.

of real property from the defendants who claimed ownership under a verbal contract of sale, the entry into possession, the making of valuable improvements and payment of the consideration, the evidence brought the case within the application of the foregoing principle.

[3] VENDOR AND VENDEE — POSSESSION BY THIRD PERSONS — STATUS OF VENDEE.—A vendee cannot successfully maintain that he is an innocent purchaser for value and without notice where before purchasing he visits the property and finds third persons in possession who informs him that they have purchased the property and are the owners thereof.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ray Manwell for Appellant.

W. H. Carlin for Respondents.

BURNETT, J.—The complaint is in the usual form of an action in ejectment and the prayer is:

"1. For the recovery of the possession of the demanded premises and for the sum of $100 damages for withholding the possession thereof.

"2. For the sum of $50, value of said rents, issues and profits, and costs of suit."

The defendants denied the material allegations of the complaint except admitting that they were in possession of the land in controversy, and as a separate defense and by way of cross-complaint they alleged:

"On or about the first day of January, 1900, one Katherine McIntyre was the owner in the possession, and entitled to the possession, of the lands in plaintiff's complaint herein described; and on or about the said date she did for the price or consideration of Ten Dollars per acre by a verbal agreement then and there made between her and cross-complainants grant, sell and transfer the West twenty-five (25) acres of the southwest quarter of the northwest quarter of Section 27, Township 17, North Range Five East M. D. M., situate and being in the County of Yuba, State of California, to-wit: The west Twenty-five acres of the lands in said complaint described.

"The said consideration of ten Dollars per acre was and is an adequate consideration for the contract and as to said Kathcrine McIntyre, and to all persons interested the said contract is just and reasonable; and whatever rights plaintiff claims to have acquired were so acquired with full knowledge of the rights of these cross-complainants as in this cross-complaint set forth."

"At the said time of the said verbal agreement in Paragraph 2 of this cross-complaint mentioned said twenty-five acres aforesaid were entirely unimproved with no buildings or improvements thereon and were grown up to chaparral, brush and in a generally wild and uncultivated condition.

"That thereupon upon the making of said verbal agreement of purchase and sale aforesaid and in good faith and relying thereon, these cross-complainants moved upon and took possession of said Twenty-five acres, and have since cleared the brush therefrom, constructed and now have thereon a dwelling-house, barn, chicken-house and other out buildings and improvements; have reduced said lands to a high state of cultivation; and during a period of approximately twenty years they have occupied and used said twenty-five acres as their home; brought thereon water from Browns Valley Irrigation District; have irrigation thereon; have paid for all said water; paid all taxes and assessments of every kind levied or assessed thereon and have paid the full purchase price of said lands in said sum of Ten Dollars per acre; all in full reliance upon the said verbal agreement and with full knowledge not only of said Katherine McIntyre, but of all her successors in interest, including the plaintiff in this action and his predecessors in interest and their grantors."

No question was or is raised as to the sufficiency of the pleadings. The trial was had before the judge of the court without a jury and the findings and judgment were in favor of the defendants. In the judgment the court decided "that defendants and cross-complainants now are and at the date of the commencement of this action were the owners, in the possession and entitled to the possession" of the land in controversy [describing it] "and during none of said times did plaintiff have, nor has he now any right, title or interest in or to the same or any part or portion thereof." The court further directed the plaintiff, within

five days from notice, to execute a good and sufficient deed granting and transferring to defendants the said land and an elisor was appointed to execute such deed should plaintiff fail to do so.

[1]    That one who enters into possession of real property under a verbal agreement of sale and who makes valuable improvements thereon and particularly if he pays the purchase price is entitled to have the contract enforced and that the statute of frauds does not apply to such case is settled beyond controversy and it is hardly necessary to cite authorities in support of this legal proposition. However, among the long list of cases in which the question is discussed we may refer to *Arguello* v. *Edinger,* 10 Cal. 150, *Churchill* v. *Russell,* 148 Cal. 1 [82 Pac. 440], *Kinsell* v. *Thomas,* 18 Cal. App. 683 [124 Pac. 220], and *Howard* v. *Stephens,* 38 Cal. App. 296 [176 Pac. 65]. All the decisions are in accord with the following statement made in the Kinsell case, *supra:* "The doctrine that verbal contracts for the sale of land, if part performed by the party seeking the remedy, may be specifically enforced, is an elementary principle in equity jurisprudence and of universal application throughout the American states."

[2]    It is equally as clear from the record that the evidence brings the case within the application of the foregoing principle. Indeed, the case is stronger for the reason that the *entire* consideration was paid by defendants. Mrs. Mary McDonald testified in response to questions by her counsel as follows:

"Q. Did you have an agreement with Mrs. McIntyre about buying that land? A. Yes, sir. Q. Tell the Judge what that was. A. Well, the agreement was I bought that 25 acres from Mrs. McIntyre, the agreement was I was to pay so much every year. Mr. Carlin: How much? A. I paid $20 every year and sometimes $25 and sometimes $40 when I could get it, I kept up the taxes right along, that was to go in as payment on the place, the taxes whatever was left over went on the installment plan, paid in installments. Q. Was your agreement with her that you were to pay $20 a year each year? A. Yes, sir. Q. Some years you paid— A. Paid more, $25, yes, sir. Q. In your agreement with her when you settled up the whole thing were you to get your deed? A. No, sir, she died before she made

the deed. Q. Was she to give you a deed? A. She was to give me a deed, yes. Q. Tell the court about that. A. She was to give me a deed. Q. When? When you got it all paid up? A. When I got it all paid up she was to make out the deed, I was to get the deed. Q. Was she a widow woman? A. Yes, sir, she was widow woman. Q. How far did Mrs. McIntyre live or was her house from this land? A. About a mile, I should say about a mile. Q. What was the condition of the land when you bought it this way was it cleared or uncleared? A. No, sir, it was all brush. Mr. Carlin: Was there any house or any building on it? A. No, sir, I put up the buildings. Q. How soon after making this agreement did you and your husband go to live on the place? A. Well, as soon as we got the house up. Q. How soon did you commence to put up the house? A. In a short time; it didn't take long. Q. As soon as you made the bargain did you go at once to build? A. Yes, sir. Q. You built your house, did you? A. Yes, sir. Q. Is that the same house that is there now? A. Yes, sir. Q. A frame house, I suppose? A. Yes, sir. Q. Did you build any out-buildings? A. Yes, a little chicken-house and shed. Q. How about the chapparal and the brush, did you clear it? A. Cleared off some of it, some of it. Q. How many acres about did you clear? A. I couldn't exactly say, just cleared off as we went, maybe 10 or 15.''

It was also shown that the price paid was an adequate consideration for the land and it is not disputed that Mrs. McIntyre referred to in said testimony was the original owner of the property.

We may add that much corroborative evidence is disclosed by the record including the testimony of several witnesses that Mrs. McIntyre admitted that she had sold the land to defendants. It is true that some receipts were introduced in evidence of money paid by defendants reciting that it was for rent of the premises, but neither of defendants was able to read or write and they both testified that they had no knowledge or information that it was recited in said receipts that the money was for rent. There is some evidence also that the defendant William McDonald admitted that he was not the owner of the land but he explained by saying that he meant he had not received a deed for it. It appears also that at the time when it is claimed he made

such admission he was a man of feeble intellect and scarcely capable of performing or understanding a business transaction. At any rate the most that appellant can claim is that there is a conflict in the evidence as to this vital point, but it is apparent from the record that the finding is abundantly supported by the evidence which was offered and received on behalf of defendants.

[3] As to the only other point discussed by appellant that he is an innocent purchaser without notice it is also clear that the court was justified in finding against his contention. The evidence shows that before purchasing he went out and saw the property; saw respondents in possession. This, of course, would put him upon inquiry, but the evidence goes further as shown by the testimony of Mrs. McDonald that she told appellant that defendants had purchased the property from Mrs. McIntyre and were the owners thereof. Under such circumstances he would, of course, purchase the property at his peril and he could not successfully maintain that he was an innocent purchaser for value without notice. It is unnecessary to cite authorities in support of the proposition so well established. If it may be said that the record shows some evidence in support of appellant's claim, it cannot be doubted that the evidence to the contrary is sufficient to support the judgment.

We find no merit whatever in the appeal and the judgment is, therefore, affirmed.

Plummer, J., *pro tem.*, and Finch, P. J., concurred.