[Civ. No. 4658. Second Appellate District, Division One.—November 12, 1926.]

## SAMUEL NAU, Respondent, v. SANTA ANA SUGAR COMPANY (a Corporation), Appellant.

[1] Liens — Promise to Give Security — Equity. — Every express executory contract in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of tho original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.

[2] Id.—Leases—Security for Rent—Vested Rights—Construction of Contract.—Where a lease of real property, after fixing the

---

1. See 16 Cal. Jur. 308; 17 R. C. L. 604.

annual rental, provides that "said payment of said yearly sum to be secured each year by a first mortgage," a vested right to such prior lien is established, and a subsequent provision in said lease for said first mortgage to be given by the lessee to the lessor "at any time" the lessor "shall demand the same" merely determines the time when that formal instrument in evidence of the lien should be executed.

[3] Id.—Notice to Subsequent Mortgagee—Knowledge of Agents— Evidence—Findings.—In this action by the lessor of a tract of land to establish the priority of his lease contract lien on the lessee's crop of sugar-beets, as against a sugar company which had made certain advances to the lessee under a crop mortgage, and had sold the crop and applied the proceeds wholly to the indebtedness of the lessee to itself, the evidence showing that plaintiff's lease had been submitted to the field superintendent of said company and been read by him, and his testimony that he told the company's manager of the provision of the lease providing for a first mortgage if the lessor demanded it, together with the evidence showing that such knowledge was acquired by said field superintendent and manager within the scope of the duties imposed upon them by the sugar company, justified the trial court in finding that said sugar company had notice of plaintiff's claimed equitable lien.

[4] Id. — Action to Establish Priority — Parties — Nonjoinder — Amendment of Pleadings—Discretion of Trial Court.—Where said action was brought against the sugar company only, and there was no demurrer to the complaint, but at the opening of the trial said defendant objected to the taking of any testimony on the ground that the original lessee and his assignee (who had executed the crop mortgage to defendant) had not been made parties to the action, which objection was overruled, it was not an abuse of discretion later in the trial to permit said defendant to file an amendment to its answer, alleging as a separate defense that there was a nonjoinder of necessary parties defendant in that neither said original lessee nor his assignee were parties to the action.

[5] Id.—Parties—Nonjoinder of Tenant.—In such action, notwithstanding the defendant sugar company admitted, by not denying the fact, that the assignee of the original lessee was indebted to plaintiff in the stated sum, and that the same remained unpaid, a judgment against the sugar company based upon that proof would not be binding upon said assignee in a subsequent action against him by the sugar company, and under such circumstance said assignee came within a class of necessary parties, not because of his interest nor that of plaintiff, but because his presence as a party was necessary for the full protection of the defendant sugar company.

[6] ID.—LIABILITY TO UNDUE INCONVENIENCE—NECESSARY PARTIES.— If the defendant actually before the court may be subjected to undue inconvenience, or to danger of loss, more extensive than if the parties were before the court, that will in many cases furnish a sufficient ground to enforce the rule of making the absent persons parties.

[7] ID. — PARTIES — AMENDMENT TO PLEADING—FINDINGS—ERRONEOUS CONCLUSION OF LAW.—In this action by the lessor of a tract of land to establish the priority of his lease contract lien on the crop of sugar-beets grown on the leased premises, as against a sugar company which had made certain advances under a crop mortgage and had sold the crop and applied the proceeds wholly to the indebtedness of the mortgagor (the assignee of the original lessee) to itself, the trial court having permitted said defendant sugar company to file an amendment to its answer, alleging as a separate defense that there was a nonjoinder of necessary parties defendant in that neither the original lessee nor his assignee were parties to the action, its finding, although made as a finding of fact, that the allegations of said separate defense were untrue was merely a ruling upon a question of law, and upon the facts then and there before the court was an erroneous ruling of law.

[8] ID.—NONJOINDER OF NECESSARY PARTIES — JUDGMENT — APPEAL— STIPULATION—RETRIAL OF CERTAIN ISSUES.—Where the defendant sugar company appealed from the judgment against it in such action, and on the oral argument counsel for respondent filed a stipulation signed by the original lessee and his assignee (who had not been made parties to the action) consenting to be bound by the judgment as entered in the trial court, and agreeing that the amount therein found due as unpaid rental was the correct and true amount thereunder, and that said amount had never been paid, but was due, owing, and unpaid to plaintiff, and the appellate court determined that there was no merit in the appeal except that said persons should have been made parties to the action, it was only necessary to reverse the judgment and remand the case to the trial court with directions to order that said persons be brought in as parties to the action and that the action be retried only as to the issues raised affecting the liability of said persons.

(1) 37 C. J., p. 316, n. 78, 79, p. 317, n. 80.   (2) 36 C. J., p. 481, n. 41 New, p. 482, n. 50; 37 C. J., p. 317, n. 82.   (3) 2 C. J., p. 872, n. 19; 36 C. J., p. 510, n. 81, p. 532, n. 66.   (4) 36 C. J., p. 486, n. 33, 34, 35; 31 Cyc., p. 220, n. 13, p. 293, n. 97.   (5) 36 C. J., p. 486, n. 32; 31 Cyc., p. 208, n. 80.   (6) 30 Cyc., p. 127, n. 55.   (7) 21 C. J., p. 137, n. 24; 38 Cyc., p. 1980, n. 54.   (8) 4 C. J., p. 1197, n. 9.

6.  See 20 Cal. Jur. 479.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Reversed.

The facts are stated in the opinion of the court.

O'Melveny, Millikin, Tuller & Macneil for Appellant.

Head, Rutan & Scovel for Respondent.

CONREY, P. J.—The plaintiff, as owner of the land, on or about May 27, 1920, leased the land to Sherman Buck for a term of three years, commencing January 1, 1921. The annual rental was to be $4,400, payable on October 1st during each year of the term. On October 29, 1920, Buck assigned the lease to J. W. Culver, subject to the terms and conditions of the said lease, and said Culver agreed to carry out all of the terms and conditions of the lease. This transfer was made with consent of the lessor. On November 15, 1920, a contract in writing was entered into between defendant company and J. W. Culver for the production of sugar-beets by Culver on the leased land, from seed to be furnished by defendant, and for the sale and delivery of the beet crop to defendant. At the same time Culver executed to defendant company "a crop and chattel mortgage" as security for advances made and to be made by the company to Culver. This mortgage, duly executed, was recorded as a chattel mortgage in the office of the county recorder of Orange County on said fifteenth day of November, 1920.

On June 20, 1921, Culver executed to the plaintiff his promissory note due October 1, 1921, for the sum of $4,400, and executed a crop mortgage on said crop of beets, which was then a growing crop, and this mortgage was, on June 23, 1921, duly recorded as a chattel mortgage in said Orange County records. This mortgage was executed to the plaintiff by Culver in response to the demand of plaintiff as lessor that said mortgage be executed as security for the rental which would fall due on the first day of October, 1921. Said crop of sugar-beets was harvested by Culver and delivered to the defendant. The value thereof was in excess of said sum of $4,400. The defendant, however, after converting said sugar-beets into sugar, applied the

proceeds of the sale wholly to the indebtedness of Culver to itself without in any manner recognizing or satisfying plaintiff's mortgage or the indebtedness secured thereby, and without satisfying the lien claimed by plaintiff as lessor under said lease, or any part of the indebtedness included in plaintiff's said claim of lien. The indebtedness of Culver to the defendant for money advanced to Culver for the purpose of planting, raising, and harvesting sugar-beets upon said premises and upon certain other land leased by Culver from another land owner exceeds the sum of $17,000, of which only $10,000 has been paid. The indebtedness of Culver to the plaintiff, being the rental provided for in said lease of plaintiff's land, is wholly unpaid.

In this action, the court having found the facts, of which we have endeavored to state the circumstances so far as necessary to the consideration of this appeal, determined that plaintiff's lien by reason of the lease contract made by plaintiff to Buck and assigned to Culver and under the chattel mortgage made by Culver to plaintiff in accordance with the provisions of said lease, is prior in right to the said chattel mortgage made by Culver to the defendant; that the defendant having converted said crop of beets to its own use and received the proceeds thereof, the plaintiff is entitled to judgment against defendant in said sum of $4,400, with interest, etc. It is from this judgment that the defendant appeals.

The lease made by plaintiff to Buck and signed by both lessor and lessee contained, among other things, an agreement relating to security for payment of the annual rental, as follows: "Said payment of said yearly sum to be secured each year by a first mortgage on all of the crops growing on said land, said first mortgage to be given by the party of the second part to the party of the first part at any time said party of the first part shall demand the same." It was further agreed therein that the leased land (with certain stated exceptions) shall be planted each year to beets, and provisions were made concerning the methods of care, etc., required. The lease then proceeded: "It is further agreed that, if said party of the first part shall hold a mortgage on any crops harvested from said land, that they shall be sold in the name of the party of the first part herein, said party of the first part to handle all moneys

from the proceeds thereof and pay the balance to said party of the second part after deducting the rentals due him from said party of the second part and any necessary work or labor that he has been compelled to hire.''

In its findings of fact the court found that on or about November 15, 1920, when Culver stated to defendant that he wished to raise a crop of sugar-beets on said demised premises, the said Culver ''for the purpose of showing his right to raise said crop on said premises then and there caused defendant, its officers and agents, acting within the scope of their authority, to read and examine the said lease, and then and there verbally informed defendant, its officers and agents, acting within the scope of their authority, that plaintiff herein, as lessor under said lease, was entitled under the terms and conditions thereof to demand and receive a first mortgage on any crop of sugar beets raised on the demised premises, as security for the yearly rental of the same as provided for in said lease, and the said defendant, its officers and agents, acting within the scope of their authority, then and there read the said lease, and particularly the terms and conditions relating to the mortgage and the harvesting of the crop of sugar beets to be grown on said land, and the disposition of the proceeds from the sale thereof, as set forth in paragraph II of plaintiff's complaint, and then and there, and while acting within the scope of their authority informed the said J. W. Culver that they had read said lease, and the terms and conditions relating to said mortgage hereinbefore referred to, and then and there, and while acting within the scope of their authority, informed the said J. W. Culver that plaintiff, as lessor, was entitled to a first mortgage on the crop of sugar beets to be raised on the demised premises during the cropping season of 1921. That it is true that immediately thereafter, at said place defendant, acting through its proper officer or agent, prepared a contract for the purchase by it from J. W. Culver of sugar beets to be raised by him on the said demised premises during the cropping season of 1921, which agreement was then and there duly executed by the said J. W. Culver and the proper officers of defendant. That it is true that thereupon a copy of said agreement, properly signed, was delivered to the said J. W. Culver, and at all times since said time said agreement has

been, and now is, a valid and binding agreement as between the parties thereto.''

It will be noted that the execution and recording of plaintiff's chattel mortgage is subsequent to the execution and recording of the defendant's chattel mortgage. The theory on which plaintiff's priority must be maintained, if such priority can be maintained at all, rests upon the proposition that by reason of the terms of agreement contained in the lease, the lessor had at all times an equitable lien on the growing crops of beets and other produce of said land for the purpose of securing the payment of the annual rental, and that this equitable lien was not created, but was only further evidenced, in accordance with the lease contract, by the chattel mortgage subsequently executed by Culver to the lessor.

In support of its appeal herein, appellant contends, first, that the lease did not give to the lessor an equitable mortgage on the crops thereafter to be grown on the leased premises; and, second, that the finding that defendant had notice of plaintiff's claimed equitable lien is not sustained by the evidence. There is a further claim by appellant that there is a fatal defect of parties, in that neither Culver nor Buck were made parties to this action.

On the principles which underlie the doctrine of equitable liens, a clear statement was made, and illustrated by leading cases, in *Title Insurance & Trust Co.* v. *California Development Co.*, 171 Cal. 173, at pages 200–202 [152 Pac. 542, 554]. The substance and effect of those decisions is found in the court's quotation from Pomeroy's Equity Jurisprudence (3d vol., 3d ed., sec. 1235) as follows: [1] ''Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.'' [2] Not denying the validity of the rule thus declared, appellant says that this establishes

nothing except the principle that equity will carry out the intent of the parties where the intent to create a lien clearly appears. But appellant contends that the provisions of the lease disclose only an intention that the lessor shall have the power to demand and receive a mortgage, and that only upon the execution of the mortgage, or, at least, only when the demand was made, the lien would become effective; that the lease contract created, not a lien, but only the power to demand a lien; that the lien was contingent upon the exercise of that power. It is our opinion, however, that the terms, which we have quoted, indicated a clear intention to create a lien on the crop, for the benefit of the lessor. When the lease provided, "said payment of said yearly sum *to be secured* each year by a first mortgage," a vested right to such prior lien was established. The subsequent clause concerning the demand for execution of the mortgage determined the time when that formal instrument in evidence of the lien should be executed.

[3] Appellant next contends that the court's finding that the defendant had notice of plaintiff's claimed equitable lien is not sustained by the evidence. Defendant's negotiations with Culver were conducted primarily through its field superintendent, Mr. Gerheart, who acted with and under the general direction of the company's manager, Mr. Smiley. It is admitted that before any contract was made with the defendant, the lease made by plaintiff to Buck and assigned to Culver had been submitted to Gerheart and was read by him. According to Gerheart's testimony, he not only read the lease, but took particular notice of the provisions therein relating to the security for payment of the rent. The contention of appellant is that this knowledge of Gerheart cannot be imputed to the general manager, Smiley, and that without knowledge by Smiley of the contents of the lease, the defendant cannot properly be held to have had notice of the lien claimed by the lessor.

Smiley testified, among other things, as follows: "Mr. Gerheart had authority to sign these contracts as agent for the company. He had authority to enter into negotiations with the growers or land owners or tenants leading up to the purchase of their beets and to sign contracts when they were purchased. . . . He was supposed to look after the interest of the company, and that necessarily, I suppose,

would require him as his duty to read over the leases and see in what manner they held.'' Gerheart testified that at the time Mr. Culver came to see him on November 15, 1920, he saw the lease and read it over. That on the same day and prior to entering into the contract he had a conversation with Mr. Smiley regarding the lease. ''I told him the amount Mr. Culver would require, and if my memory is right I stated there was a clause in this lease providing for a first mortgage if Mr. Nau required it—if he asked for a first mortgage on the crops. . . . Mr. Smiley said if I considered it safe, to go ahead with the contract.'' Mr. Gerheart afterward testified that it was possible that he was mistaken in his prior testimony about what he had told Mr. Smiley, and further said that he did not think that Mr. Smiley grasped the conditions; and Mr. Smiley testified that so far as he knew he had no knowledge of the terms of the lease at the time when the mortgage to the company was executed. Nevertheless, the first testimony as given by Gerheart is sufficient to have warranted the court in believing and determining, not only that Gerheart knew the terms of the lease, but that the general manager knew that Gerheart examined the terms of the lease on that subject and was satisfied to accept Gerheart's conclusions upon the matter without a further and more direct investigation by the general manager himself. When Smiley under those conditions told Gerheart, if he considered it safe, to go ahead with the contract, and when Smiley himself, pursuant to that contract, participated in the execution of the chattel mortgage by making the mortgagee's affidavit thereto, as required by law, the knowledge which Gerheart had thus obtained of the terms of the lease was the knowledge of Smiley and of the corporation. It was knowledge acquired by the corporation's agent within the scope of the duties imposed upon him by his employer. Smiley testified also that in the transactions relating to the making of contracts of defendant with the beet growers, and in making arrangements for cash advances and for mortgages, Mr. Gerheart was the one that usually made the deal, although it was subject to the approval of the general manager, who always represented the corporation in the actual execution of the mortgage. He further admitted that this particular mortgage made by Culver to the defendant was made after

joint consultation of himself and Mr. Gerheart concerning the moneys advanced.

[4] Finally, appellant claims that there is a defect of parties, in that neither Culver nor Buck were made parties to the action, and that the court erred in its failure to require that they be brought in as defendants. There was no demurrer to the complaint. At the opening of the trial the defendant objected to the taking of any testimony, on the ground that Buck and Culver had not been made parties to the action. This objection was overruled. Later in the trial the defendant was allowed to file an amendment to its answer, alleging as a separate defense "that there was a nonjoinder of necessary parties defendant in that neither Sherman Buck nor J. W. Culver are parties to this action." This defense, although thus pleaded in the answer, is in the nature of a demurrer, and plaintiff's objection that the question should have been raised by demurrer, "and when not so raised, it is not a proper amendment at this time," should have been sustained, unless the nature and condition of the case, as then before the court, was such that the court in the interests of justice should have caused said parties to be brought in. We think that the situation was such that it was appropriate and just that those parties should be brought in, and therefore that there was no abuse of discretion in permitting this defense to be presented. [5] The defendant had admitted, by not denying the fact, the plaintiff's allegation that Culver was indebted to it in the stated amount, and that the same remained unpaid. But a judgment based upon proof or admission of such existing indebtedness of Culver was not binding upon Culver. In the present state of the case the result of such judgment would be that the defendant, upon paying the amount of the judgment, might be defeated in any action which he might bring against Culver, since that party would have an unlimited right to defend the action, because that party's right to defend the action would not in any manner be affected or limited by the judgment herein. Under such circumstances Culver came within a class of necessary parties, not because of his interest nor that of the plaintiff, but because his presence as a party in this action is necessary for the full protection

of the defendant. Perhaps Buck also is in the same class —assuming that his liability to the lessor had not been released. (*Samuels* v. *Ottinger,* 169 Cal. 209 [Ann. Cas. 1916E, 830, 146 Pac. 638].) **[6]** If the defendant actually before the court may be subjected to undue inconvenience, or to danger of loss, more extensive than if the parties were before the court, that will in many cases furnish a sufficient ground to enforce the rule of making the absent persons parties. Persons are necessary parties where the defendants already before the court have such an interest in having them made parties as to authorize those defendants to object to proceeding without such parties. (*London etc. Bank* v. *Smith,* 101 Cal. 415, 422 [35 Pac. 1027].)

**[7]** In this action, however, the court, after permitting this defense to be made, as above stated, did not order Culver or Culver and Buck to be brought in, and made a finding "that it is untrue that there is a nonjoinder of necessary parties defendant, in that neither Sherman Buck nor J. W. Culver are parties to this action." This, although made as a finding of fact, was merely a ruling upon a question of law, and upon the facts then and there before the court was an erroneous conclusion of law. For it seems clear that by failure to bring in those parties the defendant is subjected to an inconvenience and danger of future litigation with Culver or with Culver and Buck, all of which would be avoided by establishing as against them in this action the fact and amount of their indebtedness to the plaintiff. This action is in reality an action in the nature of a suit in equity, and the court might well apply the principle that equity does not act piecemeal, but where it reasonably can be done will settle the whole controversy. (Code Civ. Proc., sec. 389.)

**[8]** At the oral argument counsel for respondent filed stipulations signed by Culver and by Buck consenting to be bound by the judgment as entered in the superior court, and agreeing that the amount therein found due as unpaid rental is the correct and true amount unpaid thereunder, and that said amount has never been paid, but is due, owing, and unpaid to the plaintiff. Counsel for respondent in their brief refer to the case of *Mitau* v. *Roddan,* 149 Cal. 1 (particularly at pages 9 and 17) [6 L. R. A. (N. S.) 275, 84 Pac. 145], wherein a somewhat

similar condition arose. In that case the court decided that there was no merit in the appeal except that certain persons should have been made parties to the action, and that by reason of the failure to make them parties they were not bound by the judgments appealed from. The supreme court therefore ordered that the judgments appealed from be reversed; that said persons be brought in as parties; that if by proper pleading or stipulation filed, they shall elect to be bound by the findings and conclusions as already made, that no further retrial or consideration of the case need be had except as to a certain matter relating to attorney fees. It was directed that upon a proper finding being made as to said matter of attorney fees and said new parties having signified their election to be bound by that and the other findings and conclusions theretofore made, the court should thereupon direct judgment to be entered on the findings and conclusions without further trial of any issue; and that if said new parties should raise issues between the parties as to any matter not previously tried, or new issues, then the court should proceed to a new trial only upon the facts involved under such pleadings. We think that a similar judgment may rightly be granted by this court in the present case.

It is therefore ordered that the judgment be and the same hereby is reversed, and the case remanded with directions to the lower court to proceed with the disposition thereof under the directions contained herein; that is to say, that the superior court order that the said Buck and Culver be brought in as parties to the action, under such appropriate pleading as the defendant shall file against them; that if by proper pleading or stipulation filed they shall admit the truth of the facts so alleged, and shall elect to be bound by the findings already made, that no further retrial or consideration of the issues in the case need be had; that should said Buck and Culver, or either of them, upon their appearance file pleadings which raise issues between the parties as to any matter affecting their liability in the action, and particularly as to any amount unpaid and due from them or their liability over to the defendant Santa Ana Sugar Company upon payment by it to the plaintiff of the judgment to be entered herein, then the court shall proceed to a new trial only of the

issues involved under such pleadings. Upon the determination of those issues, and findings thereon, in addition to the findings heretofore made, the lower court shall enter its judgment. Costs of appeal are allowed to appellant.

Houser, J., and York, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1927.

Waste, C. J., and Shenk, J., dissented.