[Civ. No. 5788.   Fourth Dist.   Jan. 22, 1959.]

M. B. HOLDER et al., Appellants, v. HAROLD A. WILLIAMS et al., Respondents.

Busch & Maroney and Donald E. Maroney for Appellants.

Tomlinson & Tomlinson and John T. Tomlinson, Jr., for Respondents.

SHEPARD, J.—Plaintiffs sued to establish their equitable rights in certain residence property in Upland, California, to establish a trust, for an accounting, and recovery of $7,900 by compulsory sale of the property and distribution of the proceeds.

After a full trial, the court found as to matters here material that on April 18, 1954, plaintiffs, as owners, and defendant H. A. Williams as contractor, entered into a contract for construction of a house on said property; that for the sole purpose of facilitating construction said defendant would hold title in his name and would procure the necessary construction loan in his own name; that by May 4, 1954, plaintiffs had paid to said defendant $2,600, being the total purchase price of the lot of land involved, and on the same day said defendant purchased said lot in his own and his wife's name as grantees; that on May 6, 1954, defendants secured a construction loan on said lot in the amount of $10,000; that

thereafter, in August and September, 1954, plaintiffs paid an additional $5,300; that on September 11, 1954, Mr. Holder and Mr. Williams, each acting on behalf of the community of himself and his wife, executed a memorandum reciting what had occurred and stating that if Holder was unable to pay within 30 days the balance of $3,200 still owing to Williams, Williams "may then sell" the property; that $7,900, the total amount paid by Holder, would then be returned to Holder; that defendants before April, 1955, advised plaintiffs that they could sell the house much better if they were using it as a residence; that defendants then sold their own home and moved into said Upland house, which is the subject of this action, without the consent or permission of plaintiffs; that on April 28, 1955, defendants secured a new loan whereby the total encumbrance against the property was increased to the sum of $14,500, this also being done without the knowledge or consent of the plaintiffs; that defendants then constructed on said premises without plaintiffs' consent a heated swimming pool; that on May 24, 1955, defendant Harold Williams told plaintiffs that plaintiffs had no interest in the house and defendants would sell same when defendants were ready; that the property has not been sold; that defendants were and each of them was at all times acting on behalf of their community interest; that defendants are indebted to plaintiffs in the sum of $7,900; that plaintiffs' charges of fraud against defendants are untrue; and that the essential allegations of defendants' cross-complaint are untrue.

Judgment was entered for a money judgment in the sum of $7,900 in favor of plaintiffs and against defendants, and an equitable lien for said sum with interest at 7 per cent from November 1, 1954, until paid was impressed on the real property involved. Plaintiffs appeal.

Plaintiffs contend that the trial court ought to have declared that defendants hold the property in trust, ordered the same sold and the proceeds of the sale distributed $7,900, interest and costs to plaintiffs, and the balance, if any, to defendants.

Resulting trusts, constructive trusts and equitable liens are very much akin to each other, and their basic purposes to identify and impress upon certain property the beneficial rights that have arisen in an innocent party who in some way contributed to the acquisition, protection or improvement of that property are, in general, the same. We use, however, different names to indicate the different types

of situation, elements of approach and kind of relief available. The basic definition and rule of equity relating to resulting and constructive trusts has been crystallized into statutory form in California.

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (Civ. Code, § 853.)

"INVOLUNTARY TRUST RESULTING FROM NEGLIGENCE, ETC. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, § 2224.)

▮ Many of the liens formerly cognizable only as "equity liens" have also been incorporated into statutory form but, in the main, the "equity lien" is still nonstatutory. It is much favored by the courts to do justice and prevent unfair results. (*Mannon* v. *Pesula*, 59 Cal.App.2d 597, 606 [5] [139 P.2d 336].) ▮ In *Nau* v. *Santa Ana Sugar Co.*, 79 Cal.App. 685, 691 [1] [250 P. 705], the court quotes the general rule on equitable liens from Pomeroy's Equity Jurisprudence:

" 'Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.' "

▮ The facts presented in the case at bar would clearly have supported a judgment declaring a resulting trust. However, they are also sufficient to support a judgment declaring an equitable lien. ▮ It appears from an examination of the evidence and the court's findings that the court believed the document signed on September 11, 1954, wherein it was recited that if the balance of $3,200 shall not be paid in 30 days defendants might sell, constituted a novation and that it was the intention of the parties that plaintiffs should have an equitable lien on the property as security for the repayment to them of said $7,900. This was not unreasonable in

view of the difficulties of selling for an adequate price a home in the $25,000 class. When such a novation takes place it extinguishes the old obligation. (*Beckwith* v. *Sheldon*, 165 Cal. 319, 324 [131 P. 1049].)

When upon reliable evidence the court finds that the parties intended to create an equitable lien, such finding should not be disturbed. (*Estate of Henshaw*, 68 Cal.App.2d 627, 636 [4] [157 P.2d 390] ; *Grant* v. *De Otte*, 122 Cal.App. 2d 724, 729 [3] [265 P.2d 952].)

Plaintiffs have included in their final brief a reference to the filing of a homestead by one of the defendants a few days before the judgment was rendered in this cause, and appear to be somewhat fearful that the homestead might precede the plaintiffs' equitable lien. This is not the rule.

"Although an equitable lien is not judicially recognized until a judgment is rendered declaring its existence, the lien relates to the time it was created by the conduct of the parties." (*Hise* v. *Superior Court*, 21 Cal.2d 614, 627 [8] [134 P.2d 748].)

Therefore, under the findings of the court, the equitable lien of the resulting trust attached as of the date of the purchase of the property, was converted into an equitable lien as of September 11, 1954, and continued to be impressed upon the property and still is so impressed, subject to enforcement by foreclosure.

Paragraph 2 of the judgment herein is hereby amended to add an additional sentence at the end thereof, reading as follows: "Said lien is impressed upon the property from and after September 11, 1954." As so modified, the judgment is affirmed. Each party will bear his own costs on appeal.

Mussell, Acting P. J., concurred.