**Estepan KABAYAN, Appellant,**

v.

**Nerces YEPREMIAN; Elize Yepremian; and Sanwa Bank California, Appellees.**

**No. CV 94–1454 RAP. Bankruptcy No. LA 93–14276–RA. Adv. No. AD 93–02091.**

United States District Court, C.D. California.

Dec. 8, 1995.

---

Andre E. Jardini, Kevin J. Stack, Shahen Hairapetian, Diron Ohanian, Knapp, Petersen & Clarke, Glendale, California, for Appellant.

Richard C. Field, Cadwalader, Wickersham & Taft, Los Angeles, California, for Appellees.

## MEMORANDUM

PAEZ, District Judge.

## I

### INTRODUCTION

Appellant, Estepan Kabayan ("Kabayan"), has appealed from a summary judgment of the bankruptcy court in favor of appellees, Sanwa Bank California ("Sanwa"). Kabayan brought an adversary action against debtors, Nerces and Elize Yepremian, and creditor, Sanwa, in the bankruptcy court. The complaint sought (1) a determination of the amount of the claim and non-dischargeable status, and (2) imposition of an equitable lien and determination of its priority over Sanwa's recorded interest in certain real property. After determining that there were no genuine issues of material fact, the bankruptcy court granted Sanwa's motion for summary judgment.

We affirm the bankruptcy court's Summary Judgment. Although there may be a genuine issue of material fact regarding Kabayan's alleged equitable interest in the property, there is no genuine issue regarding Sanwa's notice of any prior unrecorded equitable interest. As Sanwa took without notice, Sanwa's recorded interest is superior to Kabayan's interest, and Sanwa is entitled to judgment as a matter of law.

## II

### RELEVANT FACTUAL BACKGROUND

In 1988, Nerces and Elize Yepremian ("debtors") obtained property at 680 East Alosta Ave., Azusa, California ("the property"). Debtors approached Sanwa Bank regarding obtaining construction loan in the fall of 1989. On March 7, 1990, Kabayan entered into a Joint Venture Agreement ("Agreement") with the debtors involving the Alosta property. Kabayan contends that he was fraudulently induced to contribute $420,000 to the Joint Venture.

The Joint Venture Agreement provided, in relevant part:

> The Venturers agree that they have undivided interests in the Venture and shall share in the profits or losses of the Venture and in all distributions of assets of the Venture (except as otherwise specifically provided in this Agreement) as follows: Yepremian 75%, Kabayan 25%.

Article IV, Section 4.01, Joint Venture Agreement. The contributions made to the venture by Yepremian and Kabayan were set forth in the Agreement:

> Yepremian shall contribute to the Venture (i) his right and opportunity to proceed with the Project on his Property, and all plans, concepts and other intangible property related thereto, at an agreed fair market value of $900,000, ... It is expressly understood and agreed by the parties hereto that Yepremian has retained exclusive fee simple ownership of the property in his individual capacity and that, except to the limited extent set forth above, any rights appurtenant thereto have *not* been contributed to the Venture.

Article IV, Section 4.02, Joint Venture Agreement. The Agreement also refers to "the Venture's interest in the property owned in fee simple by Yepremian." Article I, Section 1.02, Joint Venture Agreement. Also, the Agreement provides:

> This Agreement contains the entire agreement between the parties hereto relative to the formation of the Venture.

Article VII Section 7.03, Joint Venture Agreement. The Agreement was never recorded with the County Recorder's Office.

In late 1989, debtors received conditional loan approval from Sanwa, contingent upon

them obtaining clear title and granting a first priority deed of trust to Sanwa. In order to gain clear title, debtors had to clear a lis pendens recorded against the property by their previous partner, Luke Nahabedian. Kabayan provided debtors with $141,000 to clear the lis pendens. On August 6, 1990, Sanwa obtained an interest in the property when it recorded a deed of trust against the property as security for payment of its loan to the debtors.

Kabayan contends that before Sanwa gained any interest in the property, they were informed of the joint venture and were offered a copy of the Agreement to review, but Sanwa's agent, Kris Klinger, refused to review the Agreement or to consider additional information.[1]

Kabayan also contends that Sanwa had notice of the debtors' financial condition and lack of funds, and knew that debtors would have to obtain the necessary money from other partners or associates. Record on Appeal, Klinger's deposition, November 19, 1995, p. 1951:16–22. In addition, Kabayan asserts that Klinger testified at his deposition that he knew that debtors were Armenian, that foreign investors usually have partners, and that these debtors had at least one other former partner, Luke Nahabedian. Appellant's Brief, p. 12–13; Klinger's Deposition, November 19, 1995, p. 1926:13–17.

In October 1990, Kabayan filed a state court action against debtors and their agents alleging fraud, misrepresentation, and unjust enrichment. He also recorded a lis pendens against the property. Shortly thereafter debtors commenced this bankruptcy proceeding. Kabayan then filed an adversary complaint in bankruptcy court requesting that the court impose an equitable lien on the property and determine that his equitable interest has priority over Sanwa's recorded interest.

On December 17, 1993, Sanwa moved for summary judgment on the grounds that Kabayan could not prove that Sanwa had notice of the prior unrecorded interest. Kabayan opposed the summary judgment motion on the grounds that there were genuine issues of material fact regarding the nature of his equitable interest and whether Sanwa had notice of Kabayan's interest.

In support of its motion for summary judgment, Sanwa principally relied on the depositions of Kris Klinger, Nerces Yepremian, and Vatche Yepremian and pointed to the absence of any evidence showing that Sanwa had notice of Kabayan's alleged equitable interest. In his opposition, Kabayan relied on the same three depositions to establish a genuine issue of material fact regarding Kabayan's interest and Sanwa's knowledge of Kabayan's equitable interest. On January 18, 1994, the bankruptcy court, without explanation, granted Sanwa's motion and entered judgment in favor of Sanwa.[2]

### III

### *DISCUSSION*

### A

### *Standard of Review*

"Conclusions of law made by a bankruptcy court are reviewed de novo." *In re Wolver-*

---

1. This contention is based on the deposition of Hagop Yepremian, the debtors' son. The deposition, however, was taken March 3, 1994, after the bankruptcy court entered judgment in favor of Sanwa. In his Reply Brief, Appellant quotes liberally from this deposition. In response, Sanwa filed a motion to strike this portion of Appellant's Reply Brief. Sanwa's motion is meritorious. It was improper for Appellant to rely on matter outside the appellate record and the Court has not given any consideration to the excerpts from Hagop Yepremian's deposition.

2. In the summary judgment proceeding, Sanwa objected to the admissibility of certain deposition testimony of Vatche Yepremian and Nerces Yepremian that was taken in the state court civil action. Sanwa argued that since it was not a party to the state court action, the deposition testimony was hearsay and the former testimony exception to the hearsay rule did not apply. Fed. R.Evid. 804(b)(1). The bankruptcy court overruled these objections and found that the state court depositions were admissible. We agree with Sanwa. The state court deposition testimony of Vatche Yepremian and Nerces Yepremian constituted inadmissible hearsay evidence. Kabayan failed to show that either of these witnesses were unavailable in the adversary proceeding or that Sanwa's interest was adequately represented at the depositions. Fed.R.Evid. 804(b)(1). Accordingly, we have not given any consideration to the state court deposition testimony of Vatche Yepremian and Nerces Yepremian.

*ton Assoc.*, 909 F.2d 1286 (9th Cir.1990). "De novo standard of review is appropriate for all issues presented on appeal, because they constitute either pure questions of law or mixed questions of law and fact." *Baldwin Park Inn Assoc. v. Baldwin Park (In re Baldwin Park Inn Assoc.)*, 144 B.R. 475, 477–78 (C.D.Cal.1992).

Under a de novo standard of review, the reviewing court does not "defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988). "We review a grant of summary judgment de novo. The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the [lower] court correctly applied the relevant substantive law." *Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096, 1102 (9th Cir.1989) (citations omitted); *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 463 (9th Cir.1990).

 In considering a summary judgment motion, the bankruptcy court, when assessing whether the non-moving party has raised a genuine material issue, must believe the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), *citing Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita*:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**B**

*Analysis*

**1. Kabayan's Interest in the Property**

**a. Equitable Lien**

An equitable lien may be imposed "where the claimant's expenditure has benefitted another's property under circumstances entitling the claimant to restitution.... A specific application of the doctrine occurs when a lender advances money which benefits the land of another in mistaken reliance upon an imperfect mortgage or lien upon that land." *Jones v. Sacramento Savings and Loan Assoc.*, 248 Cal.App.2d 522, 529–30, 56 Cal.Rptr. 741 (1967) (citations omitted); *Lockie v. Cooperative Land Co.*, 207 Cal. 624, 627, 279 P. 428 (1929).

The basic purpose of an equitable lien is "to identify and impress upon certain property the beneficial rights that have arisen in an innocent party who in some way contributed to the acquisition, protection or improvement of that property...." *Holder v. Williams*, 167 Cal.App.2d 313, 315, 334 P.2d 291 (1959).

An equitable lien "is enforceable against the property in the hands not only of the original contractor, but of ... purchasers or encumbrancers with notice." *Holder v. Williams*, 167 Cal.App.2d at 315, 334 P.2d 291 (quoting *Nau v. Santa Ana Sugar Co.*, 79 Cal.App. 685, 691(1), 250 P. 705, 707 (1926)).

Kabayan contends that he was induced to contribute money to the debtors for improvement of the property as a result of Nerces Yepremian's fraudulent misrepresentations. It may well be that Kabayan could qualify as an innocent party who contributed money towards the "acquisition, protection or improvement" of debtors' property under "circumstances entitling the claimant to restitution." *Jones v. Sacramento Savings and Loan Assoc.*, 248 Cal.App.2d at 529–30, 56 Cal.Rptr. 741. If so, an equitable lien could be imposed. Such a lien would be enforceable against both the debtors and Sanwa, if Sanwa took its interest in the property *with* notice. *Holder v. Williams*, 167 Cal.App.2d at 315, 334 P.2d 291. This would be true even if Sanwa never induced any detrimental

action by Kabayan. We need not resolve this issue because as we explain, *infra*, Sanwa acquired its interest in the property without any notice of the alleged fraudulent misrepresentations by Nerces Yepremian.

### b. *Interest Granted by the Agreement*

Kabayan also argues that the Joint Venture Agreement granted him an interest in the property. However, Sanwa asserts that under the Joint Venture Agreement Yepremian retained exclusive fee simple title and Kabayan acquired no interest in the property. Thus, the parties' interpretation of the agreement is in dispute. Kabayan relies on extrinsic evidence, such as depositions of those who were involved with the joint venture or had knowledge of its existence and ledgers of the Joint Venture, to support his interpretation of the Agreement.

■ It is well settled that a contract must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal.Civ. Code § 1636; *Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal.App.4th 338, 346, 10 Cal.Rptr.2d 165 (1992). Generally, the language of the instrument must govern its interpretation if it is clear and explicit. Cal.Civ.Code § 1638. Indeed, extrinsic evidence may not be offered to vary or add to the terms of an integrated agreement. Cal.Code Civ.Proc. § 1856. One exception to the parol evidence rule is that extrinsic evidence may be introduced to explain the meaning of ambiguous contractual language.

> The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is "reasonably susceptible."

*Winet v. Price*, 4 Cal.App.4th 1159, 1165, 6 Cal.Rptr.2d 554 (1992) (quoting *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 442 P.2d 641 (1968)).

In *Winet v. Price, supra*, the court suggested the following analysis in determining whether the ambiguity exception permits introduction of parol evidence as to the meaning of a contract: (1) What is the construction of the contract urged by the proponent of the parol evidence; (2) Is the contract reasonably susceptible to this construction; (3) If so, did the parties intend this construction. *Winet, supra*, 4 Cal.App.4th at 1165–1166, 6 Cal.Rptr.2d 554.

Kabayan asserts that the Agreement is ambiguous and that it was the intent of the parties that Kabayan's capital contributions to the Joint Venture would be secured by a 25% interest in the property. He further contends that the proffered extrinsic evidence would support this interpretation. Again we need not resolve this issue. Even if we assume that parole evidence is admissible to interpret the agreement, and that such evidence establishes genuine issues of material fact, this does not mean that the bankruptcy court erred in granting Sanwa's motion for summary judgment. As noted above, not only must Kabayan establish the existence of his equitable lien, he must also show that Sanwa obtained its recorded interest with knowledge of Kabayan's unrecorded equitable interest. The admissible evidence presented in connection with the summary judgment proceeding establishes that Kabayan cannot meet this burden.

### 2. *Notice and Priority of Interests*

### a. *Legal Standard*

Under California law, a conveyance of real property must be "recorded in order to be valid against a subsequent purchaser of the same property." *In re Weisman*, 5 F.3d 417, 420 (9th Cir.1993); *In re Probasco*, 839 F.2d 1352, 1353 (9th Cir.1988); Cal.Civ.Code § 1214. Therefore, "a bona fide purchaser who records prevails over a prior transferee who failed to record." *In re Probasco*, 839 F.2d at 1353.

■ However, California Civil Code § 1217 provides: "an unrecorded instrument is valid as between the parties thereto and those who have notice of it." *In re Weisman* 5 F.3d at 420; Cal.Civ.Code § 1217. If a subsequent purchaser or encumbrancer is determined to have notice of a prior unrecorded interest, he is not a "bona fide purchaser for value without notice" and he takes "subject to the equitable rights" of the pos-

sessor. *Beck v. Combs,* 169 Cal.App.2d 583, 586, 337 P.2d 505 (1959).

■ The party claiming the equitable interest has the burden of proof to "show due and sufficient notice to defendant of matters outside the record title tending to establish any resulting or constructive trust in plaintiff's favor." *Kowalsky v. Kimberlin,* 173 Cal. 506, 510–11, 160 P. 673 (1916). To be sufficient, notice should be "precise and complete enough to put the defendant upon his guard." *Id.* In *Kowalsky,* the court held that the claimant's telegram claiming ownership in the property was insufficient notice of the claimant's interest because it was "a mere, bald assertion" and it was "unsupported by the records and undefined by the claimant". *Id.* at 510.

California Civil Code § 19 further provides: "every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned this fact." A prudent purchaser is " 'a: marked by wisdom or judiciousness b: shrewd in the management of practical affairs c: marked by circumspection.' " *In re Probasco,* 839 F.2d at 1356. Also, a prudent purchaser is "charged with knowledge of information that a reasonable inspection of the property would have revealed." *In re Weisman,* 5 F.3d at 420. *In re Van Ness Associates, Ltd.,* 173 B.R. 661, 670 (Bankr.N.D.Cal.1994).

For example, the Ninth Circuit has held that: "Clear and open possession of real property constitutes constructive notice of the rights of the party in possession to subsequent purchasers. Such a prospective purchaser must inquire into the possessor's claimed interests, whether equitable or legal." *In re Probasco,* 839 F.2d at 1353 (citations omitted). See also *In re Van Ness Associates, Ltd.,* 173 B.R. at 670; and *Ocean Shore R. Co. v. Spring Valley Water Co.,* 218 Cal. 86, 88, 21 P.2d 588 (1933).

■ Actual notice may also attach when a "subsequent party is told of the prior inter-

est, hears it discussed by others, [or] sees some document referring to the interest...." 2 Miller & Starr, § 8:45 at 355, *citing Laughton v. McDonald,* 61 Cal.App. 678, 683, 215 P. 707 (1923); *Williams v. Miranda,* 159 Cal.App.2d 143, 153, 323 P.2d 794 (1958); *Beverly Hills Nat. Bank & Trust Co. v. Seres,* 76 Cal.App.2d 255, 261–264, 172 P.2d 894 (1946).

#### b. *Analysis*

■ Kabayan argues that there is evidence that Sanwa had notice of Kabayan's prior unrecorded interest; Sanwa knew of the debtors' financial condition and lack of funds; Sanwa was aware that foreign borrowers usually have partners; and Sanwa knew that these debtors had at least one other previous partner. Klinger's deposition, November 19, 1995, p. 1951:16–22 and p. 1926:13–17. Kabayan argues that the Yepremians offered a copy of the Agreement to Sanwa's agent, Klinger, but he refused to see it. Kabayan, however, was not a percipient witness to the incident; instead, he relies on inadmissible evidence to support this contention.

■ The burden is on Kabayan to prove either actual notice or inquiry notice. *Kowalsky v. Kimberlin,* 173 Cal. at 510–11, 160 P. 673. Kabayan has failed to satisfy his burden and has provided virtually no evidence that Sanwa had any reason to suspect a prior unrecorded interest in the property. Kabayan only provides vague reasons that should have made Sanwa suspect that there was a partner, such as the fact that Sanwa knew that foreign investors usually have partners.

■ Additionally, neither the debtors nor Kabayan expressly told Sanwa about Kabayan's purported interest, the partnership, or the Joint Venture Agreement. Although Kabayan presents evidence that Sanwa might have been aware of an agreement, Kabayan presents no evidence that Sanwa was aware of *Kabayan's* potential interest or any other prior unrecorded interest. This fails to go beyond a mere "scintilla of evidence" and therefore is insufficient to establish a genuine issue of material fact. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, *citing Adickes v. S.H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In sum, viewing the evidence in the light most favorable to Kabayan, even if there is

an issue of fact regarding Kabayan's interest, there are no genuine issues of material fact regarding Sanwa's actual or inquiry notice of Kabayan's unrecorded prior interest. Under these circumstances, Sanwa is a bona fide purchaser *without* notice, and its recorded interest is superior to any prior equitable interest of Kabayan. As a matter of law, Sanwa was entitled to judgment and the bankruptcy court did not error in granting Sanwa's motion for summary judgment.

## IV

### *CONCLUSION*

For the reasons set forth above, the judgment of the bankruptcy court is AFFIRMED.