ANDERSON v. HICKS.

(Supreme Court, Appellate Division, Second Department. April 19, 1912.)

1. DRUNKARDS (§ 6*)—CONTRACTS—VALIDITY.

    The contracts made by one adjudged incompetent by reason of habitual drunkenness, and while the adjudication remains in force, are void so far as they affect his property, though made in a temporary period of sobriety.

    [Ed. Note.—For other cases, see Drunkards, Cent. Dig. § 7; Dec. Dig. § 6.*]

---

2. MARRIAGE (§ 60*)—ANNULMENT—PARTIES.

Under Code Ciy. Proc. § 2340, authorizing a committee of an incompetent to maintain in his own name any action which the incompetent might have maintained, a committee of one adjudged an habitual drunkard may not maintain an action to annul a marriage entered into by the incompetent after the adjudication.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 125–128, 130–135; Dec. Dig. § 60.*]

3. MARRIAGE (§ 60*)—ANNULMENT—PARTIES.

Under Code Civ. Proc. §§ 1747, 1748, providing that an action to annul a marriage on the ground of insanity may be maintained by any relative of the lunatic who has an interest in avoiding the marriage, and, where no relative of the lunatic brings an action the court may allow an action by any person as next friend of the lunatic, one suing as the relative or next friend to annul a marriage entered into by one after being adjudged an habitual drunkard must make the incompetent a party.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 125–128, 130–135; Dec. Dig. § 60.*]

4. MARRIAGE (§ 65*)—ANNULMENT—ESTOPPEL.

One adjudged an habitual drunkard is not bound by a judgment annulling his marriage rendered in an action by the committee of his person merely because he wrote letters to the committee urging the action and its prosecution, since an incompetent may not estop himself.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 139; Dec. Dig. § 65.*]

Woodward, J., dissenting.

Appeal from Special Term, Westchester County.

Action by James M. Anderson, committee of the person of Eugene Anderson, an incompetent, against Josephine M. Hicks. From an order granting a motion of defendant to vacate a judgment for the annulment of a marriage, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Benjamin N. Cardozo, of New York City (Henry R. Barrett, on the brief), for appellant.

James Richards, of New York City, for respondent.

CARR, J. In 1888 one Eugene Anderson was adjudged an incompetent by reason of habitual drunkenness, and his brother, James M. Anderson, was appointed committee of his person, while one Walter Edwards was appointed committee of his estate. The incompetent was sent by the committee of his person to a "home" at Amityville, L. I. There he was allowed a very large measure of personal freedom, which he took advantage of to have himself married ceremonially to a female inmate named Hicks, likewise there detained as an habitual drunkard under the direction of her committee. This happened in June, 1894. In 1895 the brother, James Anderson, applied to the Supreme Court in Westchester county for his appointment as "the next friend" of the incompetent in order to bring an action for the annulment of the marriage on the ground that Eugene Ander-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

son was a lunatic at the time of the marriage, and so continued. The court at Special Term made an order that:

"James M. Anderson be and he is hereby authorized as the next friend of said Eugene Anderson to maintain an action against said Josephine M. Hicks for the purpose of declaring void said marriage contract, and of annulling said marriage."

Thereafter James Anderson brought an action in the Supreme Court in Westchester county against the defendant Hicks for the annulment of the marriage between her and Eugene Anderson. The summons described the parties as follows:

"James M. Anderson, committee of the person and next friend of Eugene Anderson, plaintiff, against Josephine M. Hicks, defendant."

The complaint alleged the marriage and the date thereof. It declared that Eugene Anderson was a lunatic at the time of the marriage and still remained so. It set forth that the plaintiff was a brother of the alleged lunatic, and had an interest to avoid the marriage by reason of his relationship and his being entitled to a portion of the property of the alleged lunatic in the event of his death as one of his heirs at law and next of kin. It set forth, further, that the plaintiff had been "appointed the committee of the person of said Eugene Anderson as an habitual drunkard," and, further, that he had been appointed the next friend of said incompetent for the purpose of bringing this action. Eugene Anderson was not made a party to the action. The defendant, Hicks, appeared by attorneys, but served no answer, and on her default a reference was had, and on the coming in of the referee's report, a judgment was entered on her default annulling the marriage on July 5, 1896. In November, 1910, the defendant applied by petition to the Supreme Court in Westchester county on notice to the plaintiff for an order vacating and setting aside the judgment entered in 1896 on a number of specified grounds, and in support of this application she submitted an affidavit of Eugene Anderson, from which it appears that both of them are now and for many years since the judgment have been living together openly as man and wife. After a hearing on her motion, an order was granted vacating the judgment, and from this order the plaintiff appeals.

In granting the petition of the defendant, Hicks, the learned Special Term based its decision on one ground, namely, that the failure to make Eugene Anderson a party to the action rendered the judgment void so far as it affected his matrimonial status, and that, where a judgment annulling a marriage was void and ineffective as to one party to the marriage, it was necessarily void and ineffective as to the other party. It is contended by the appellant that Eugene Anderson was neither a necessary nor a proper party to the action, and that he was bound by the judgment because he was in the action in the person of his brother, the plaintiff, who was the committee of his person as an habitual drunkard.

[1] There had been no prior adjudication that Eugene Anderson was insane. He had been adjudged an incompetent by reason of habitual drunkenness. Habitual drunkenness does not always include

necessarily insanity in a legal sense (Lewis v. Jones, 50 Barb. 645, 667), whether or not it would fall within the definition in a medical sense. Yet the effect of an adjudication of incompetency by reason of habitual drunkenness is largely the same as to subsequent acts of the incompetent while the adjudication remains in force, and subsequent contracts made by the incompetent so far as they affect his property are void, even though made in a temporary period of sobriety. Wadsworth v. Sharpsteen, 8 N. Y. 388, 59 Am. Dec. 499. Whether this inability to contract extends to a contract of marriage has not been decided in this state. In Payne v. Burdette, 84 Mo. App. 332, it was held that an adjudication of lunacy, while conclusive as to the subsequent acts generally of the incompetent in relation to his property, simply raised a presumption of incompetency against the validity of a marriage entered into by the incompetent during the period of the wardship, which presumption could be rebutted by the parties to the marriage. The language of our statute in relation to the validity of the contract of marriage is essentially the same on this point as that of Missouri which was construed in Payne v. Burdette, ut supra. In Imhoff v. Witmer's Administrator, 31 Pa. 243, it was held that, while one adjudicated an habitual drunkard might not make a marriage settlement during the period of his wardship, he might, however, make a valid marriage.

[2] Whatever be the legal effect of an adjudication of habitual drunkenness upon a subsequent marriage of the incompetent during the wardship, I am of opinion that a mere committee of his person has no right, by virtue of such office, to represent him in court either for or against the marriage as a substituted party. The committee of the person, as well as the committee of the property, are simply the court's bailiffs, and have no other powers than are given each of them by statute or by the court. Pharis v. Gere, 110 N. Y. 336, 347, 18 N. E. 135, 1 L. R. A. 270. The right to maintain such an action as the incompetent might have brought if no committee had been appointed is given by the Code of Civil Procedure, § 2340, to the committee of the property of the incompetent. While there was a committee of the property in this case, he was not made a party to this action.

There are many cases to be found in the earlier reports where a lunatic was held to be represented in court when his committee was a party to the action, but in all of these cases the committee was a committee of the property, or of person and property, of the incompetent.

[3] The plaintiff, however, had the right to maintain this action under section 1747 of the Code of Civil Procedure as a relative of the alleged lunatic. In his complaint he sets forth a cause of action under this section, as well as a cause of action under section 1748 as a next friend. There was an evident intent to rely upon both sections, although the latter section applies only "where no relative of the idiot or lunatic brings an action to annul the marriage." But the plaintiff, suing as a relative, does not so stand in the shoes of the alleged lunatic as to represent him by substitution. In such a case

the alleged lunatic is not only a proper, but an absolutely necessary, party to the action. Coddington v. Larner, 75 App. Div. 532, 78 N. Y. Supp. 276. It was said in the case last cited:

"It is certainly a novel, if not a startling, proposition that a judgment can be procured dissolving a marriage contract without having both of the parties to it before the court. Manifestly this cannot be done. Fero v. Fero, 62 App. Div. 470 [70 N. Y. Supp. 742]."

It is urged, however, that section 1747 is susceptible of a construction which excludes the necessity of making the alleged lunatic a party to the action. This result is based upon the language of the section, which reads as follows:

"An action to annul a marriage, on the ground that one of the parties thereto was a lunatic, may be maintained, at any time during the continuance of the lunacy, or, after the death of the lunatic in that condition, and during the life of the other party to the marriage, by any relative of the lunatic, who has an interest to avoid the marriage."

It is contended that if the action may be maintained when the alleged lunatic is dead, and as he cannot then be a party, it may be maintained while he is alive without making him a party. This contention is so plainly a non sequitur as to require no discussion. Whether this action was brought by the plaintiff as a relative or as the next friend of the alleged lunatic, the incompetent should have been made a party, and, as the action proceeded to judgment without his presence therein, the court had not before it the parties necessary for a complete determination of the only controversy involved.

[4] I am not at all impressed with the further argument of the appellant that, because Eugene Anderson, the alleged lunatic, wrote numerous letters to the plaintiff urging him to bring the action and press it through, he is thereby to be considered bound by the judgment to the same effect as if he had been made a party. The action was brought on the theory that he was then a lunatic. His letters to the plaintiff show that he had then repented his bargain, and was tired of his new spouse. But, if he was then a lunatic, he could not estop himself, and the plaintiff claims consistently that Eugene was a lunatic before the marriage, when it was made, and ever since.

The order of the Special Term should be affirmed, with $10 costs and disbursements.

JENKS, P. J., and THOMAS and RICH, JJ., concur.

WOODWARD, J. (dissenting). Eugene Anderson was adjudged an habitual drunkard in April, 1888, and in May of that year his brother, James M. Anderson, the plaintiff, was appointed committee of his person. Eugene was placed in an institution known as the Brunswick Home, in Amityville, L. I., and while there he met another inmate of the home, the defendant, Josephine M. Hicks. It seems that this woman had been adjudged an habitual drunkard; one James Pearson being her committee. These two incompetents appear to have been accorded a large measure of liberty, and in June, 1894, they were joined in marriage by a colored clergyman of the locality. It appears from the record that Eugene soon wearied of the relation,

and begged his brother, the plaintiff, to annul the marriage. The record is full of letters written by Eugene to his brother, urging action. The plaintiff, as "committee of the person and next friend of Eugene Anderson," brought an action for the annulment of the marriage, resulting in a judgment in favor of the plaintiff, which was entered in the office of the clerk of the county of Westchester on the 6th day of September, 1896. On the 21st day of November, 1910, the notice of motion for the vacation of the judgment was served, and, upon the motion coming on for a hearing, the defendant was granted the relief prayed for. The plaintiff appeals from this order.

The learned justice at Special Term in granting the order handed down a memorandum in which he holds that as the alleged lunatic was not a party to the action the judgment is void, and that an order declaring its invalidity may properly be entered. The learned court declares that "I perceive no distinction in principle between an action brought by any third party under any of the sections 1744, 1747, 1748, and 1750"; and relies upon the cases of Coddington v. Larner, 75 App. Div. 532, 78 N. Y. Supp. 276, Fero v. Fero, 62 App. Div. 470, 70 N. Y. Supp. 742, and Wood v. Baker, 43 Misc. Rep. 310, 88 N. Y. Supp. 854. There is, however, a distinction between these several provisions of the Code of Civil Procedure in their language; and, while it is probably true that there is no abatement of the principle that the persons to be affected by the judgment must be before the court, I am of the opinion that under the provisions of section 1747 of the Code of Civil Procedure the party in interest is before the court when he is represented by his relative, having an interest to avoid the marriage, otherwise a portion of that section would be inoperative. It is provided that:

An "action to annul a marriage, on the ground that one of the parties thereto was a lunatic, may be maintained, at any time during the continuance of the lunacy, or, after the death of the lunatic in that condition, and during the life of the other party to the marriage, by any relative of the lunatic, who has an interest to avoid the marriage. Such an action may also be maintained by the lunatic, at any time after restoration to a sound mind; but in that case, the marriage shall not be annulled, if it appears that the parties freely cohabited as husband and wife, after the lunatic was restored to a sound mind."

The lunatic himself is not permitted to bring the action while he is a lunatic any more than an idiot is permitted to bring an action of this character. Section 1746. The cause of action is given to "any relative * * * who has an interest to avoid the marriage," in both sections, and the reason for this is obvious. The marriage of an idiot or a lunatic is void, because neither of them has the power to contract. Neither has the power to dispose of property after the lunacy has been adjudged, and a relative who has an interest to avoid the marriage has this right, because otherwise the widow of the lunatic or idiot would be entitled to share in his estate. For this reason a relative who has an interest to avoid the marriage is permitted to act "after the death of the lunatic in that condition." Certainly, if the lunatic is a necessary party under the provisions of section 1747 of the Code of Civil Procedure, this provision for bringing the action after his death becomes inoperative, and I think that there is no oc-

casion for such a construction. During the lunacy of an individual, after the lunacy is adjudged, he is incapable of making any disposition of his property. He cannot by will disinherit his heirs. He has no interest in his property, other than that which is vested in his committee, during the continuance of his lunacy. During that time his heirs at law and next of kin have an expectancy in his estate, of which he has no power to divest them, and his relatives who have "an interest to avoid the marriage" are given the authority to bring the action to annul a marriage which would otherwise divest them of their rights as heirs. The lunatic has no interest in the marriage or its dissolution. No rights of his are affected, for he is, in law, incapable of making a contract or of disposing of his property. Any relative who has an interest to avoid the marriage is a party in interest; and he brings the action in a representative capacity for the benefit of all of the relatives having an interest to avoid the marriage, and this power is extended after the death of the "lunatic in that condition, and during the life of the other party to the marriage." The relatives of the lunatic can get no advantage from his property during his life. Their rights are confined to his estate after his death. If he regains his mind, he is then given authority to bring the action himself, for he then has an interest in the matter, though this right is limited by the provision that "the marriage shall not be annulled, if it appears that the parties freely cohabited as husband and wife, after the lunatic was restored to a sound mind."

If I am right in this position, then Eugene Anderson was not a proper party to the action to annul this marriage. Being adjudged a lunatic prior to the marriage, he was incapable, at the time of the ceremony, of entering into the contract, he had no more power to dispose of any portion of his property by means of a marriage contract than by any other contract or will, and his relatives had an interest in avoiding this marriage because it interposed a barrier to their rights in the event of his death before being restored to a sound mind, and his brother, who was acting as his committee under an order of the court, had an interest to avoid the marriage. While the order appointing the plaintiff as "next friend" does not fully comply with the statute, which gives the cause of action to "any relative of the lunatic who has an interest to avoid the marriage," the petition for such order recites that the plaintiff is "a brother of Eugene Anderson, and the committee of his person, and was appointed such committee by an order of this court on the 19th day of May, 1888," which would justify the inference that he was a relative having an interest in avoiding the marriage, and the irregularity is of no consequence at this time.

In the cases relied upon as authority by the learned court below, the statute made different provisions from those relating to idiots and lunatics. In Coddington v. Larner, supra, it was held under the provisions of sections 1747 and 1750 of the Code of Civil Procedure that an incompetent person, not so adjudged at the time of the marriage, was entitled to be brought in as a party on his own motion. In that case Mrs. Larner was declared incapable of conducting her own affairs, and a committee of her person and property was ap-

pointed after her marriage. A daughter by a former husband brought an action to set aside the marriage on the ground that at the time of the marriage the mother was a lunatic and incapable of contracting the marriage. The mother asked to be made a party to the action, and this was refused. On appeal it was held that she was entitled to be made a party defendant. In that case, however, the marriage was contracted at a time when the mother was presumptively sane. There had been no adjudication that she was insane, and upon this issue—the question of her sanity at the time of entering into the marriage—she was probably entitled to a hearing. Gridley v. College of St. Francis Xavier, 137 N. Y. 327, 330, 33 N. E. 321. No one is in law a lunatic until that fact has been judicially determined, and, when the plaintiff's mother in that case entered into the marriage contract, she was presumptively sane, and she had a right to be heard upon the question of her competency. This is quite a different case from the case at bar, where both parties were incompetent as judicially determined at the time the marriage was contracted. It is one thing to deny a person the right to be heard when he requests it, quite another to say that a party is necessary to the proceeding; and section 1747 does not make any provision for the lunatic to bring the action, or to appear therein, during the time that he is judicially a lunatic. Moreover, in the Coddington Case, the complaint also alleged that the marriage was brought about by "fraud and undue influence of the defendant," which was an action provided for in section 1750 of the Code of Civil Procedure, which provides that it may "be maintained, at any time, by the parties whose consent was so obtained," and she was undoubtedly a necessary party to this action.

The case of Fero v. Fero, supra, was likewise an action brought under the provisions of section 1750, where the mother of an infant brought the action to set aside the marriage on the ground that it was procured by force, fraud, etc.; and it was held that the infant was a necessary party to the action.

The order appealed from should be reversed.