[L. A. No. 20340. In Bank. Apr. 19, 1949.]

MARTHA McCLURE, Respondent, v. LAURA ALPHA DONOVAN, Appellant.

Irving M. Walker, Lee J. Myers and William Kay Crawford for Appellant.

Martin, Hahn & Camusi, James G. Butler and Horace L. Hahn for Respondent.

SPENCE, J.—As "sister of Jefferson D. Caruthers," Martha McClure brought an action to annul his marriage with defendant, Laura Alpha Donovan, upon the ground that "at the time" thereof he "was wholly incompetent and incapable by reason of incompetence, of contracting marriage," and he "continues to manifest that state of mind which renders him an incompetent person." It was further alleged that in the "purported marriage" defendant took "undue advantage of the mental condition and illness of" Mr. Caruthers and was seeking to "obtain [his] life savings and earnings." Coincidentally with the commencement of the annulment action, a proceeding was instituted for the appointment of one Louis A. Ghiotto as guardian of the person and estate of Mr. Caruthers, upon the ground of his alleged incompetency. The two matters were later consolidated for the purpose of trial. At the conclusion thereof, plaintiff in the annulment action obtained leave to amend her complaint "to conform to proof" and accordingly there was added the allegation that "at the time of [his] said marriage" with defendant he "was of unsound mind." Thereafter the court disposed of the litigation before it as follows: (1) in the guardianship proceeding an order was made appointing the guardian as nominated, and the appeal therefrom was dismissed (*McClure* v. *Donovan*, 82 Cal. App.2d 664, 667 [186 P.2d 718]); (2) in the annulment ac-

tion, findings were made in conformity with plaintiff's claims, and from the judgment of annulment accordingly entered and the order denying a motion for a new trial, defendant has appealed. Since said last mentioned order is nonappealable, the appeal therefrom should be dismissed (Code Civ. Proc., § 963; 2 Cal.Jur. § 34, p. 173; *Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550]); and there now remains for consideration only defendant's appeal from the judgment in the annulment action.

As grounds for reversal, defendant urges the following points: (1) the impropriety of the court's order for the consolidation of the guardianship and annulment proceedings for trial; (2) the plaintiff's legal incapacity to maintain the annulment action; (3) the insufficiency of the complaint in several particulars affecting the prosecution of the annulment action; (4) the insufficiency of the evidence to sustain the judgment declaring the marriage in question to be "null and void"; and (5) certain errors committed by the court "during the proceedings and trial" which "when taken together, and in addition to the other points discussed . . . show . . . that the defendant was deprived of a trial such as she was entitled to under the law of this state." In the light of the record and the stipulation filed in this court by the duly appointed guardian, defendant cannot prevail in her objections.

## 1. *Consolidation of the Annulment and Guardianship Proceedings*

Defendant argues that the court erred in consolidating the two matters for the purpose of trial and asserts that there was no stipulation to that effect. In so challenging the court's ruling, defendant claims that "a consolidation of cases" will be "approved" only "where the causes might have been united" (*Smith* v. *Smith,* 80 Cal. 323 [21 P. 4, 22 P. 186, 549]; *Wolters* v. *Rossi,* 126 Cal. 644 [59 P. 143]); "where the subject matter is the same" (*Staub* v. *Muller,* 7 Cal.2d 221 [60 P.2d 283]; *Manufacturers' Finance Corp.* v. *Pacific Wholesale Radio, Inc.,* 130 Cal.App. 239 [19 P.2d 1013]); or "where the liability is based upon the same facts, with different claimants" (*Aufdemkamp* v. *Pierce,* 4 Cal.App.2d 276 [40 P.2d 599]; *Thomsen* v. *Culver City Motor Co., Inc.,* 4 Cal.App.2d 639 [41 P.2d 597]; *People* v. *Ocean Shore Railroad, Inc.,* 22 Cal.App.2d 657 [72 P.2d 167]). ■ Ordinarily, consolidated actions may be determined by a single set of findings and a single judgment—"the allegations of the various com-

plaints may be taken together and treated as one pleading"
(*Simpson* v. *Bergmann* [consolidation of actions to foreclose
mechanics' liens, Code Civ. Proc., § 1184a], 125 Cal.App. 1, 6
[13 P.2d 531]) and "for the purposes of all further proceed-
ings, the cases are to be treated as if the causes had been
united originally" (1 Cal.Jur. § 51, p. 374). But a different
situation exists where pending actions are consolidated only
for the purpose of trial of related issues. In such event the
evidence presented in one case is to be deemed applicable in
the other insofar as it is relevant thereto, but separate findings
and judgments must be made in each case in disposition of the
particular issues as independently submitted. As declared by
statute, actions "may be consolidated, in the discretion of the
court, whenever it can be done without prejudice to a sub-
stantial right." (Code Civ. Proc., § 1048.)

An examination of the reporter's and clerk's tran-
scripts herein unmistakably establishes that the court, recog-
nizing that the claimed mental deterioration of the alleged in-
competent, Mr. Caruthers, was the crux of both proceedings,
ordered their consolidation for the limited purpose of trial
consistent with the premise of the respective pleadings. Mani-
festly, such consolidation was done in the interest of saving
the time of the court by avoiding a repetition of the evidence
that would be offered in either proceeding which would be
pertinent to the disposition of the other. Thus, at a prelimi-
nary hearing in the annulment action and after a colloquy
in which all counsel and the court took part in considering
the most expeditious procedure to be followed regarding the
necessarily overlapping evidence—Mr. William Kay Crawford
being sole counsel for defendant at that time—the court said:
"Then that [the guardianship proceeding] will be consoli-
dated with this [the annulment action], and we will try it all
together. . . Because, if the guardianship is for an incompe-
tent, there will be the same doctors and the same witnesses
and everything, and then if an annulment hearing is had we
will take it in order, and stipulate the testimony as to one
may apply to the testimony of the other. Is that agreeable,
counsel?" Mr. Crawford replied: "Yes, provided the date
is satisfactory." Counsel for plaintiff at all times expressed
their willingness to accede to the court's suggestion. Further
statements were made by the court and counsel at various
stages in the presentation of the evidence, but the record does
not disclose any objection to the trial of the two matters at
the same time so as to avoid the reiteration of overlapping

medical and lay testimony in the hearing of the second proceeding.

The order made at the conclusion of the preliminary hearing in the annulment action and appearing in the minutes of the court recites "that the guardianship proceedings filed on behalf of Jefferson D. Caruthers may be consolidated with this [annulment] matter for the purpose of hearing and hearing on guardianship, annulment and restraining order be had on September 10, 1946 at 9:30 A.M. . . . Notice is waived."

When the "hearing" proceeded on September 10 as scheduled, Mr. Lee J. Myers, who had become associated with Mr. Crawford as counsel for defendant, refused to stipulate to the trial of the two matters together. Thereupon the court referred to the proceedings had at the preliminary hearing, and Mr. Myers countered with a suggestion which in effect was the same as the court's order previously made and to "accomplish the same purpose"—that "after we hear the annulment, certain testimony of certain witnesses may be considered [as having been introduced] in the guardianship proceeding." The trial then proceeded. At the conclusion thereof, the court made and filed its findings and entered judgment in the annulment action, and made separate findings and an order appointing a guardian in the incompetency proceeding.

The court did not err in its action, and defendant was in nowise prejudiced by such procedure, for the degree of Mr. Caruthers' alleged mental deterioration constituted the real and only controversial point in litigation. █ Mr. Crawford expressly consented to the order of consolidation, and Mr. Myers' suggestion at the commencement of the trial amounted to an affirmance of that consent and a waiver of any further objection to the court's order insofar as it contemplated a saving of time for the court as well as for the parties in the presentation of overlapping "testimony of certain witnesses." Accordingly, the evidence adduced by both plaintiff and defendant as to the condition of Mr. Caruthers' mind was related to each proceeding for the determination of the respective issues, and the court, mindful of such independent considerations, properly made separate disposition of the two matters.

2. *Plaintiff's Legal Capacity to Maintain the Annulment Action*

█ Defendant disputes the right of plaintiff to prosecute the annulment action on her brother's behalf, and claims that

"the entire proceedings and judgment are void." In considering this point, the timeliness of defendant's objection must first be noted. The want of "legal capacity" of a party "to sue" is one of the grounds for demurrer to a complaint (Code Civ. Proc., § 430, subd. 2), and since the record discloses that defendant did not raise the objection, "either by demurrer or answer," plaintiff urges that it "must be deemed to have [been] waived" (Code Civ. Proc., § 434). Defendant, however, argues that the propriety of her objection may not be so dismissed because of a so-called "oral demurrer" made at the outset of the preliminary hearing in the annulment action and before the trial—the statement of her counsel that he "should like to appear in somewhat of a special appearance, to resist any further action of this order at this time, for the reason that there is absolutely no color of right for this plaintiff to be in court. . . . There is no capacity set forth." But no such pleading as an "oral demurrer" is recognized by our law and, as so classified, it need not be noticed. (Code Civ. Proc., § 465; *Redondo Improvement Co.* v. *City of Redondo Beach,* 3 Cal.App.2d 299, 302 [39 P.2d 438].) Only (1) "objection to the jurisdiction of the court" and (2) "objection that the complaint does not state facts sufficient to constitute a cause of action" may be taken orally. (Code Civ. Proc., § 434.) However, correlating defendant's objection with the premise of a "general demurrer" in that the complaint does not state a cause of action which plaintiff is permitted to prosecute without joining the alleged incompetent as a party, the merits of defendant's position deserve consideration.

As sustaining her right to sue on her brother's behalf, plaintiff relies on the following provisions of the Civil Code. Section 82 declares that a "marriage may be annulled" if "at the time of the marriage . . . [subd. 3] either party was of unsound mind, unless such party, after coming to reason, freely cohabit with the other as husband or wife." Section 83 specifies that an "action to obtain a decree of nullity of marriage" on the ground of "unsound mind" of one of the parties "must be commenced . . . [subd. 3] by the party injured, or *relative* or guardian of the party of unsound mind, at any time before the death of either party." (Emphasis added.) Plaintiff claims that as the sister of the alleged mentally incompetent spouse, she comes precisely within the express wording of the statute as a "relative" authorized to prosecute such action in her own name, while defendant argues that such procedure would violate considerations of due process in protection of

the marriage contract and accordingly the statutory language should not be construed as excusing the presence of the spouse of "unsound mind" as a necessary party to the action, sustaining the propriety of the court's undertaking to determine the annulment issue before it.

A necessary party is one so interested in the controversy that he should normally be joined in the litigation in order to enable the court to do complete justice, and when his presence in the suit can be obtained, it is improper for the court to attempt to adjudicate his rights without effecting his joinder therein. (*Bank of California* v. *Superior Court,* 16 Cal.2d 516, 521 [106 P.2d 879].) Manifestly, the judgment in the annulment action, brought for the purpose of dissolving the marriage between Mr. Caruthers and defendant, would necessarily affect his rights and so would require his presence before the court in order that "a complete determination of the controversy" might be had "without prejudice to [his] rights." (Code Civ. Proc., § 389.) To annul such marriage on the ground of Mr. Caruthers' unsoundness of mind without giving him any "notice or an opportunity for a hearing" on that issue would clearly involve considerations of due process (*Suckow* v. *Alderson,* 182 Cal. 247, 249-250 [187 P. 965]), and a judgment so rendered in avoidance of his marital status would be contrary to all recognized rules of fairness in procedure. (*Bank of California* v. *Superior Court, supra,* p. 523.)

It is true that during the prosecution of the annulment action Mr. Caruthers had no general guardian to appear for him and that none was appointed until after the "consolidated" trial of the guardianship and annulment proceedings, as above noted. But such circumstances would not give to plaintiff—as a "relative" of a person who is suffering from a legal disability—the right to act for her brother without naming him as a party to the action seeking the dissolution of his marriage. Rather such procedure upon plaintiff's part, premised upon bare allegations as to her brother's inability to act for himself in protection of his asserted rights, would assume a principal fact in issue in the matrimonial controversy before the court—whether Mr. Caruthers was unable to act for himself or was of "unsound mind." Mr. Caruthers was present throughout the trial—so no question of his availability can here arise.

Nor should it be concluded from section 83 of the Civil Code—because of its provision that "a relative . . . of

the party of unsound mind" may commence an action for the annulment of his marriage—that the Legislature thereby intended that a spouse *even admittedly* under such legal disability, as determined by previous adjudication, need not be made a party to the litigation. Such view would create an exception to the rules that "[e]very action must be prosecuted in the name of the real party in interest" (Code Civ. Proc., § 367), and that "an insane or incompetent person . . . must appear either by his general guardian or by a guardian ad litem" (Code Civ. Proc., § 372). So pertinent is the case of *Dunphy* v. *Dunphy,* 161 Cal. 380 [119 P. 512, Ann.Cas. 1913B 1230, 38 L.R.A.N.S. 818], where it was held proper for an annulment action on the ground of "unsound mind" to be prosecuted in the name of the incompetent by a relative appointed "guardian ad litem" for that purpose in consequence of "application" by the latter therefor, "as provided by section 373 of the Code of Civil Procedure," and on "evidence tending to show that plaintiff was incompetent." (P. 389.) Such decision recognizes the vital interest of the incompetent in the matter of seeking the judicial redress of wrongs or the vindication of asserted rights as involved in the annulment proceeding, as well as the need for an appropriate officer appointed by the court in the prosecution of such litigation where the incompetent is not able personally to conduct it. Consistent with these considerations, section 83 of the Civil Code will not be construed as contemplating the maintenance of the cause of action without joinder of the incompetent as a "real party in interest" to the annulment action. By force of the statute, a "relative" as such may "commence" the action, but an effective appearance therein on behalf of the spouse allegedly of "unsound mind" must rest upon the same basis as any other proceeding involving the appearance of "an insane or incompetent person" through a "general guardian" or "guardian ad litem"—and the person so appointed by the court may be the "relative." In such manner the statutorily established safeguards provided for the protection of the spouse suffering the legal disability of incompetency would be operative in that the actions of the guardian would be to some extent controlled by the court, and the same procedural rules would apply in preservation of the rights of "an insane or incompetent person" incident to an annulment action as prevail in other litigation affecting his interests. There is no reason to assume that the Legislature envisaged any other method of procedure in providing

the remedy of annulment in favor of the party of "unsound mind." (See 3 Nelson on Divorce and Annulment (2d ed.) § 31.10, ch. 31, pp. 286-288; notes, 70 A.L.R. 965, 149 A.L.R. 1288; *Anderson* v. *Hicks,* 150 App.Div. 289 [134 N.Y.S. 1018, 1021-1022]; *Kaplan* v. *Kaplan,* 256 N.Y. 366 [176 N.E. 426, 427].)

Plaintiff refers to the case of *Jones* v. *Alameda,* 85 Cal.App. 607 [259 P. 976], and the *Estate of Karau,* 26 Cal.App.2d 606 [80 P.2d 108], as upholding her right to prosecute her brother's annulment action in her own name. An examination of the cited opinions reveals them to have been directed to the consideration of factors distinguishable from the precise question here at hand. In *Jones* v. *Alameda, supra,* the alleged ground of annulment was the minority of one of the contesting parties (Civ. Code, § 82, subd. 1). The "original complaint" was filed by "the father of the minor" in his own name; a "demurrer" thereto "was sustained with leave to amend"; and thereafter "an amended complaint was filed joining [the] minor, as party plaintiff, the minor appearing by her [father as] guardian *ad litem.*" (P. 609.) In the challenge of the judgment annulling the marriage, the matter of the propriety of "bringing in" the minor as a party to the action was raised upon the claim that two causes of action were thereby improperly joined. Upon sustaining the joinder, the court declared that the annulment suit presented only "one cause of action . . . in which both the minor and the parent are interested." (Pp. 611-612.) Accordingly, "both" were deemed "proper parties" for prosecution of the annulment action to judgment. But whether the parent might maintain such litigation without naming the minor as a party thereto was not a question at issue nor determined thereby.

Likewise different considerations prevailed in the case of *Estate of Karau, supra,* involving a contest between the decedent's surviving husband and her sister as to the right to apply for the appointment of an administrator of the estate. At the hearing of the matter, the sister attempted to introduce evidence to invalidate the marriage because of "the mental condition of the decedent" at that time. Objections to such line of inquiry in the probate proceeding were sustained on the premise that "after the death of a spouse, the validity of the marriage cannot be made the subject of a collateral attack . . . upon the ground of the mental incapacity of the spouse at the time of the marriage ceremony." (P. 607.) As the basis of such ruling was presented for review and ap-

proved, the court referred to the "provisions of sections 82 and 83" of the Civil Code as "controlling in the matter of annulment of marriage contracts upon the ground of unsoundness of mind" (p. 609), and thus limiting the period for the commencement of such action to "any time before the death of either party." In so discussing the legislative intent, the court was concerned wholly with the *time* prescribed for the avoidance of a marriage where the cause is "unsoundness of mind."

Nor does an action for annulment of a marriage under authority of sections 82 and 83 of the Civil Code present a situation analogous to that envisaged by section 196a of said code, providing that a "civil suit to enforce [the] obligations" of a father for support "may be maintained *in behalf of* a minor illegitimate child, by his mother or guardian." (Emphasis added.) The italicized language expressly declares the premise of such action to be in furtherance of the *interest* of the child whereas section 83, in designating the "relative" as a proper party to commence an annulment proceeding, does not similarly qualify its purpose as "in behalf of" or in the interest of the "party of unsound mind." Of course, if the spouse of "unsound mind" is desirous of having the marriage annulled, he would be interested in obtaining the judgment as originally demanded by his "relative"; but if, on the other hand, he is satisfied with his marital status and believes that it is to his advantage not to attack it, his interest would be adverse to that of his "relative" instituting the litigation. Under such circumstances, the propriety of having the spouse of "unsound mind" joined as a party litigant for the protection of his rights cannot be open to dispute.

Unquestionably, the Legislature has full control of the subject of marriage and may fix the conditions under which the marital status may be created or terminated, as well as the effect of an attempted creation of that status. (*Estate of Gregorson*, 160 Cal. 21, 24 [116 P. 60, Ann.Cas. 1912D 1124, L.R.A. 1916C 697].) With the right of action for annulment of a marriage so statutory in nature, it is for the Legislature to prescribe when and by whom such litigation may be commenced, and this it has done by section 83 of the Civil Code, *supra*. But as that section is construed in relation to other statutory provisions regulating the procedure to be followed in actions of this character and with due regard for the fundamental principles of due process as lying at the very foundation of the administration of justice,

it does not appear that the Legislature thereby intended to authorize a "relative" of a person of "unsound mind" to prosecute such litigation without joining him as a party in the proceeding (*cf., Salmon* v. *Rathjens,* 152 Cal. 290, 294 [92 P. 733]; *Black Rock Placer Mining District* v. *Summit Water & Irrigation Co.,* 56 Cal.App.2d 513, 516-517 [133 P.2d 58])— pursuant to considerations establishing him as the "real party in interest" (Code Civ. Proc., § 367.) It is true that "a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted" (Code Civ. Proc., § 369), but such declaration cannot be assumed to envisage the prosecution of an annulment action by the "relative" of the spouse of "unsound mind" (Civ. Code, § 83) without making him a party to the action consistent with considerations of due process in effecting "a complete determination of the controversy" pursuant to the dictates of justice. (Code Civ. Proc., § 389; *Bank of California* v. *Superior Court, supra,* 16 Cal.2d 516, 521.) Accordingly, the matrimonial controversy ought not to be adjudicated until the spouse suffering the legal disability in question is brought into the case.

However, upon the oral argument in this case plaintiff's counsel presented and, by permission of this court, filed a stipulation signed "Jefferson D. Caruthers, by Louis A. Ghiotto, guardian of his person and estate," and providing that "under appropriate order" of court, "he be made and brought in as a party to the action" and "be bound by the findings of fact and conclusions of law as already made" herein and the "judgment . . . entered in accordance" therewith "without further trial of any issue in [the] case." The force of this stipulation in curing the defect as to the necessary party litigant for the determination of this action will be considered later, after disposing of the other points raised on this appeal.

### 3. *The Sufficiency of the Complaint in the Annulment Action*

Preliminarily it should be said with regard to the effectiveness of defendant's grounds of challenge in the stated particulars, that defendant at the trial offered no objection to the introduction of evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action and, as above stated, no demurrer to the complaint was filed. While, accordingly, the first two "particulars" listed as

"alleged deficiencies" may be deemed to have been waived by reason of defendant's failure to make timely objection, they will be briefly noted. The last point listed goes to the sufficiency of facts and would be ground for general demurrer.

(a) The objection that defendant "was sued in her former name, Laura Alpha Donovan," and not in her married name of Caruthers, is of no consequence. She was identified in the complaint as "Laura Alpha Donovan, also known as Laura Alpha Caruthers," and she filed her answer without remonstrance. No mention of such discrepancy having been registered with the trial court, it cannot be raised on appeal. Had she suggested to the trial court that she was improperly named in the litigation, a correction in that particular could have been ordered. (Code Civ. Proc., § 473.)

(b) The objection to the allegations referring to defendant as the "alleged wife" of Mr. Caruthers and to the "alleged marriage" is likewise without force. Plaintiff was seeking a decree voiding the marriage, and she couched her pleading in such language as would indicate that she did not recognize the marriage as valid or defendant as the lawful wife of Mr. Caruthers. Accordingly, such wording reflected only her premise of actionable redress.

(c) The last objection is significant in that it challenges the sufficiency of the complaint because of its failure to plead the ground of annulment in the language of section 82 of the Civil Code, that Mr. Caruthers at the time of the marriage was of "unsound mind"—the recital being simply that he "was [then] wholly incompetent" and "continue[d]" to be "incompetent" at the time of the commencement of the action. But such defect in allegation was cured by evidence that was received without pertinent objection from defendant. (2 Cal.Jur. § 85, p. 269.)

The record establishes that the cause was tried on the theory that the "unsoundness of Mr. Caruthers' mind" was the principal contested issue between the parties. True, there was testimony as to his incompetency, but there was also ample positive evidence that he was, at the time of the marriage, and continued to be at the time of the trial, "of unsound mind." Thus, one of the examining doctors was asked whether Mr. Caruthers' mind was "either sound or unsound." He answered: "It is unsound." He was also asked: "Would you say he was of unsound mind . . . on or about August 1st [1946]," the date of the marriage; and he answered: "I think so." Mr. Ghiotto, who was subse-

quently appointed the guardian for Mr. Caruthers, testified that he "first" noticed "this condition of unsound mind" in "1942 or 1943"; that the "condition" had "not improved" but had "grown worse." Another witness—a relative by marriage—after stating that he had known Mr. Caruthers "between 35 and 40 years" and during such time had visited him "once a month or maybe oftener," was asked to give "an opinion . . . as to the condition of [Mr. Caruthers'] mental sanity, with respect to whether he was sound or unsound," and he answered: "He was unsound." There was other testimony that Mr. Caruthers was "irrational" and that he was "completely unbalanced"; and another one of the examining doctors for plaintiff stated that in his opinion Mr. Caruthers was "of unsound mind" on "the date of August 1, 1946" and would not have "a thorough understanding or any sufficient amount of understanding of as serious a contract as a marriage contract" on that date. His condition was described by witnesses as "senile dementia," a "state of senile deterioration," an "advanced degree of mental deterioration," "medically incompetent," and "mental enfeeblement."

All the foregoing testimony relating to Mr. Caruthers' state of mind was presented without objection as to any deficiency in the scope of the issues raised by the pleadings. The only objections interposed were that "no proper foundation [for the evidence] ha[d] been laid" or that the opinion requested "call[ed] for a conclusion," but no other challenge was made to any of the questions. Such state of the record demonstrates that the parties were not in disagreement during the trial as to the issue to be adjudicated by the court. In fact, one of defendant's counsel, in cross-examining the medical witnesses produced by plaintiff, expressly referred to Mr. Caruthers' "unsound mind" and questioned on that point. Under all these circumstances, the objection now to the sufficiency of plaintiff's pleading comes too late. It is the settled rule that even though a complaint is defective in some particular, if the case is tried on the theory that it is sufficient and evidence accordingly is received without objection, the unsuccessful party cannot later effectively contest the sufficiency of the pleading. (*Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318, 325-326 [147 P. 90]; *Hirsch* v. *James S. Remick Co.*, 38 Cal.App. 764, 767 [177 P. 876]; *Guidera* v. *Lapiana*, 52 Cal.App. 460, 463 [199 P. 557]; *Meer* v. *Cerati*, 53 Cal.App. 497, 505 [200 P. 501]; *City of Redding* v. *Dozier*, 56 Cal.App. 590, 592-593 [206 P. 465]; *Asnon* v. *Foley*, 105 Cal.App. 624,

628 [288 P. 792]; *Grimes* v. *Richfield Oil Co.,* 106 Cal.App. 416, 422 [289 P. 245].)

So here any formal defect in the pleading of the issues was cured by the evidence. The court accordingly permitted plaintiff to amend her complaint "to conform to [the] proof" on her claim as to Mr. Caruthers' "unsoundness of mind," and it made a finding of fact that he "was of unsound mind," and that by reason thereof he "was incapable of . . . contracting said marriage." As so analyzed, the record distinguishes this case from those cited by defendant for the proposition that "amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and *upon which the adverse party had no opportunity to defend.*" (*Weinberg* v. *Dayton Storage Co.,* 50 Cal.App.2d 750, 759 [124 P.2d 155], emphasis added; see, also, *Lavely* v. *Nonemaker,* 212 Cal. 380, 385 [298 P. 976]; *Richter* v. *Adams,* 19 Cal.App.2d 572, 576 [66 P.2d 226].)

### 4. *The Sufficiency of the Evidence to Sustain the Judgment*

Defendant refers to testimony given by medical and lay witnesses regarding Mr. Caruthers' "incompetency," "mental enfeeblement," and "senile dementia," and contends that it is insufficient to sustain the finding and judgment that at the time of the marriage in question he was of "unsound mind." But the trial court's decision is sustained by other testimony—the above noted as well as by that which will be hereinafter recited—all of which defendant ignores in her argument.

The evidence hereinabove recited and the testimony concerning the facts surrounding the marriage and the actions and statements of Mr. Caruthers, both before and after the ceremony, furnish ample support for the court's finding that he "was of unsound mind and did not have the mental capacity and understanding to understand the subject matter of the marriage contract, its nature and probable consequences and was incapable by reason of such unsoundness of mind of contracting said marriage and at the present time is and continues to manifest a state of mind which renders him and he is a person of unsound mind. That it is true and the court is of the firm conviction from the evidence and the preponderance thereof that Jefferson D. Caruthers was and is incapable of comprehending and understanding the contract of marriage, its nature and probable consequences, and that

the said Jefferson D. Caruthers, subsequent to the said marriage, was incapable of freely cohabiting with the said Laura Alpha Donovan, also known as Laura Alpha Caruthers, in that during said period the said Jefferson D. Caruthers was of unsound mind. That at no time since the consummation of the said purported marriage has the said Jefferson D. Caruthers regained his soundness of mind nor will he do so.''

On the day of the marriage Mr. and Mrs. Gill in their automobile drove Mr. Caruthers and the defendant from Mr. Caruthers' home near El Monte to the branch office of the county clerk in Pasadena to obtain a marriage license. Prior to leaving and during their ride no mention was made of the forthcoming wedding. The entire conversation related to scenes along the highway and ''general topics of the day.'' After securing the license, the ''wedding party'' proceeded to a garage in El Monte owned by a justice of the peace, a particular friend of Mr. Gill and to whom Mr. Gill explained that ''he was playing Cupid [as] he had some people who were to be married.'' They all then continued to the home of the justice of the peace for the ceremony, he and his wife being the only others present in addition to the ''wedding party.'' It was necessary at times to prompt Mr. Caruthers regarding his responses in the proceeding. Apparently he was unaware of the fact that he was being married and he interjected remarks concerning matters foreign to such a solemn occasion. In fact, once defendant told him to ''quit your clowning.''

There was no wedding ring nor any of the usual accompaniments of a wedding. After the ceremony was concluded, there was no conversation concerning the event. The justice of the peace testified that the ''wedding party'' remained in his home for ''possibly 10 minutes,'' and that during that time the conversation related principally to Mr. Caruthers' activity in ''years gone by when he raised apples'' and to other experiences of his early life.

About two days after the wedding, relatives of Mr. Caruthers went to visit him—as had been their custom each week-end —at which time defendant was absent from the premises. Mr. Caruthers made no mention of his having just been married. Although he had sold 16½ acres of his 17-acre farm less than two months previously to Mr. and Mrs. Gill, he said to his relatives during their visit: ''I have had this place now for 40 years and I think I will keep it until I die, I am not going to sell it.'' His visitors did not know at that time that he had married again or that he had sold his property. (His

first wife, to whom he had been married more than 50 years, had died only the year before.) One of the relatives testified that during their visit Mr. Caruthers "commenced to laugh and he said, 'I had a funny thing happen to me.' I said, 'Let's hear it, Uncle Jeff, I have heard a lot of funny things on you so far.' Well, he said, 'Somebody came in here and wanted me to go up and stand up with them to get married.' He said, 'I don't know what the hell they wanted with me; I didn't know them, so anyway they came and helped me put on my clothes and hustled [me] off to Long Beach and I stood up with them; she was a hell of a pretty girl. I didn't know what she was, what they wanted me to stand up for I don't know, but they came back and dumped me out and away they went and I haven't seen them since.' " His lack of understanding of the events that had occurred is indicated not only by his statement about the marriage but by his declaration that he had been taken to Long Beach, which was several miles farther from his home than Pasadena and in a different direction. Since he had resided on his farm for 40 years, it is reasonable to presume that he should have been acquainted with his surroundings, and that if he had been in his right mind he would have known whether he had been taken to Long Beach or Pasadena.

A week later, during another visit of the relatives, mention was made of the fact that Mr. Caruthers had only a few of the livestock which he had previously kept on his farm. He was asked whether or not he had sold his horses and mules, as they were not "in the pasture." He answered: "No, someone came up and carted them down below here." Then defendant, who was present on that occasion, said: "You sold them for $300 [a few days previously to Mr. Gill] and you gave the man a bill of sale for them." Mr. Caruthers replied: "Wait a minute . . . you are all wrong about that; . . . I didn't sell any mules or stock." Defendant, after repeating that he had sold the animals and trying to explain it to him, said: "Well, it doesn't make any difference, it is none of your business anyhow. . . . Jeff and I are married. . . . I own this place." This was the first notice of the marriage given to the relatives. After such announcement and when defendant left the room, one of the relatives—Mr. Caruthers' niece—asked if he were married and he answered: "No, Honey, now don't worry, I am not married." When then told that "Laura [the defendant] says you married her," he replied: "Who is Laura, you mean that woman that drinks

and smokes so much? . . . Oh, no, . . . I wouldn't marry her.''

The sale of Mr. Caruthers' farm to Mr. and Mrs. Gill was made in June, some seven weeks prior to the marriage. Defendant accompanied Mr. Caruthers to the bank for the purpose of reading over the escrow instructions and signing the necessary documents to complete the conveyance. During a visit of his relatives about a week later, they inquired whether he had sold his property and he said ''absolutely no,'' that he would not do so. When one of them then stated, ''Well, it is rumored that you have,'' he replied: ''Well, boy, if anybody would know about my selling surely I should know. . . . When I tell you it has not been sold, it has not been sold.'' Further indication of his lack of knowledge of the sale is the fact that after the conveyance had been made, he dug ''post holes'' for fencing the property and continued to work on the land in the same manner as before.

There was considerable additional evidence sustaining the allegation and finding that Mr. Caruthers was of ''unsound mind'' at the date of the marriage and at the time of the trial, but its recital is unnecessary since the foregoing references to the record are amply sufficient. True, there was also evidence from defendant's witnesses that he knew that he had been married to her. But this only produced a conflict in the record as would normally be expected in every case in which the issues are controverted, and since the trial court by its finding of fact has indicated which witnesses were accredited in resolving the various contradictions (27 Cal.Jur. §§ 156-157, pp. 182-186), its determination will not be disturbed. (10 Cal.Jur. § 383, pp. 1172-1173.)

## 5. *Other Alleged Errors*

Defendant complains of four ''other'' matters, ''any one of [which], standing alone,'' she admits would not be ground for reversal, but ''when taken together'' and cumulative to her main objections, show that she did not have a fair trial. Her position in this regard is devoid of merit.

■ (a) Defendant's counsel, without notice to plaintiff or her counsel, procured from the presiding judge an order extending the time for the filing of objections to the proposed findings of fact and conclusions of law. Two days later, the trial judge, upon his own motion and without notice to defendant's counsel, vacated and set aside the order. The facts of the case and the condition of Mr. Caruthers—both

mental and physical, he being over 80 years of age—were not known to the presiding judge but were within the knowledge of the trial judge. The order of the trial judge recites that he had given "previous instructions to the respective counsel that he desired the findings of fact and conclusions of law and any exceptions or objections . . . or any amendments to the same, to be filed in accordance with the statutory requirement and without any extension of time," and that he had "advised respective counsel that he would be in Los Angeles" at a certain time "for the purpose of disposing of [the] cause." There was no error in vacating the order under the circumstances. ■ Defendant suffered no prejudice for (1) it does not appear what amendments she desired to submit nor that any amendments to the proposed findings would have been of any avail to her; and (2) the findings signed by the trial judge are sustained by ample evidence.

■ (b) Defendant alleges "abuse of discretion by the court in his lengthy examination of witnesses." She necessarily concedes it to be the rule that "considerable latitude is allowed a trial court" in regard to this phase of the proceedings, "especially in a non-jury case," consistent with his duty to ascertain the facts pertaining to the issues which he must determine. (27 Cal.Jur. § 49, pp. 65-66.) Here an inspection of the record demonstrates that the court's interrogation of various witnesses, while extended at times, was directed to the clarification of particular points that were not covered to his satisfaction by the questions of counsel and which would otherwise have remained obscure in the testimony—all pertinent in reflecting the condition of Mr. Caruthers' mind as the premise for determining what disposition should be made of both the annulment and guardianship cases. Such proceedings involved important and serious considerations, for a finding that a person is "incompetent" or "of unsound mind" should not be made lightly, or at all, unless the court is convinced that such conclusion is warranted by the facts. In the light of these observations, the court's examination of the respective witnesses was reasonable and proper.

■ (c) Defendant complains that the court criticized her because her counsel did not call Mr. Caruthers as a witness. Mr. Caruthers was in court during the entire trial. When the court expressed a desire to have him testify—"to hear his answers to certain questions, certainly concerning whether he knows what the proceedings here are all about"—defendant's counsel objected while plaintiff's counsel not only did

not object but expressly agreed to his testifying. The remarks of the court to which defendant takes exception were made during an argument as to whether either party should call Mr. Caruthers as a witness, with plaintiff's counsel maintaining that she was precluded from such step by reason of her position—contrary to defendant's—that he was "of unsound mind." (Code Civ. Proc., § 1880, subd. 1.) With the matter so in dispute and the added challenge of defendant's counsel on the right of the court to call Mr. Caruthers as its witness (but see 27 Cal.Jur. § 49, p. 65), the court concluded as follows: "I merely expressed the wish that counsel would call him; I am not going to place myself in the position of being an advocate one way or the other. I am here to decide the issues presented. I merely expressed the desire . . . but I am certainly not going to force the issue. I do feel that the court could be helped if he was called, with respect to at least observing him as a witness, observing just how he might react to, and his understanding of the present situation. I am not going to call him as a witness for the court." There appears to be nothing objectionable in such remarks.

 (d) Defendant claims that the court committed error in failing to rule promptly upon her motion "to be relieved" of the "stipulation for consolidation" of the two proceedings and "to sever the cases for trial." But as hereinabove discussed, the consolidation of the cases for the purpose of trial was within the discretion of the court, was deemed "agreeable" by defendant's counsel as the matter was originally discussed at the preliminary hearing as well as later, and was made in the interest of expeditious procedure—saving the time of the court by avoiding two trials of closely related issues. The court had a right to give proper consideration to the motion and to take it under submission for that purpose. There was no error in failing to rule upon the motion immediately upon its presentation, nor was there error in denying it at a subsequent point in the trial. Defendant suffered no prejudice by the ruling, for her counsel well knew the controverted issues to be tried and appreciated the fact that the same witnesses would testify, and that substantially the same evidence would be given in both the guardianship and annulment proceedings.

 Returning now to a consideration of the "stipulation and consent" filed by plaintiff at the oral argument in this case, expressing the election of "Jefferson D. Caruthers, by

Louis A. Ghiotto, guardian of his person and estate" to be made a party to the annulment action and to be bound by the findings and judgment entered therein, it would appear to cure the prevailing defect as to the absence of a necessary party. (*Mitau* v. *Roddan,* 149 Cal. 1, 17 [84 P. 145, 6 L.R.A. N.S. 275]; *Nau* v. *Santa Ana Sugar Co.,* 79 Cal.App. 685, 695-696 [250 P. 705].) As above indicated, the annulment action was fully tried on all the material issues, particularly that concerning the "unsoundness of mind" of Mr. Caruthers; he was present during the entire trial; and the prejudicial errors urged by defendant as grounds for reversal of the judgment are all without merit except her claim that he should have been joined in the litigation as a "real party in interest." The court had jurisdiction to declare the marriage a nullity in view of the domicile in the state of at least one of the parties thereto—the defendant (*Brill* v. *Brill,* 38 Cal. App.2d 741, 748 [102 P.2d 534]; see, also, *Delanoy* v. *Delanoy,* 216 Cal. 27, 39 [13 P.2d 719, 86 A.L.R. 1321]; *Comfort* v. *Comfort,* 17 Cal.2d 736, 742 [112 P.2d 259]; *People* v. *Harlow,* 9 Cal.App.2d 643, 646 [50 P.2d 1052]; *Kegley* v. *Kegley,* 16 Cal.App.2d 216, 220-221 [60 P.2d 482]; *Estate of McNutt,* 36 Cal.App.2d 542, 546-547 [98 P.2d 253].) Moreover, it appears that the other party to the marriage, Mr. Caruthers, was likewise a bona fide resident of the state as was plaintiff herein, his sister, who had authority to commence the annulment action. (Civ. Code, § 83, subd. 3.) Accordingly, the cases cited by defendant for the "universal rule" that jurisdiction of the subject matter cannot be conferred or waived by consent, agreement or stipulation (*Van Horn* v. *Justice's Court,* 216 Cal. 235, 242 [13 P.2d 704]; *Standard Oil Co. of California* v. *State Board of Equalization,* 6 Cal.2d 557, 559 [59 P.2d 119]; *Fuller* v. *Nelle,* 12 Cal.App.2d 576, 580-581 [55 P.2d 1248]; *Vaughan* v. *Roberts,* 45 Cal.App.2d 246, 253 [113 P.2d 884]) have no application here.

Nor can defendant successfully challenge the authority of the guardian to execute this stipulation on behalf of his ward, Mr. Caruthers. The trial consumed several days, with the transcript of the testimony running through 840 pages, and at the conclusion thereof the court found, upon sufficient evidence, that Mr. Caruthers was at the time of his marriage, and continued to be, "of unsound mind." It would appear that no justifiable purpose would be served by a retrial of this principal issue, and that such procedure, as the stipulation recites, "would be costly to the estate." Since the

"guardian" of a person "of unsound mind" has authority to institute in the name of his ward an action for the annulment of the latter's marriage by reason of his said mental condition at that time (Civ. Code, § 83, subd. 3), and also has authority "with the approval of the court . . . to agree to the order or judgment to be entered therein for or against his ward" (Code Civ. Proc., § 372), it would reasonably follow that such guardian should be held to have authority, subject to the approval of the court, to enter into a stipulation which would give judgment to his ward on the same cause of action which theretofore had been fully tried and determined. Here the guardian, consistent with such considerations and his duty in assuming "the care and custody of the person of his ward and the management of his estate" (Prob. Code, § 1500), properly elected to take advantage of the favorable judgment rendered in the annulment action in relation to his ward, and "in the interest of justice to all parties, this should be permitted." (*Mitau* v. *Roddan, supra,* 149 Cal. 1, 17; see, also, *Nau* v. *Santa Ana Sugar Co., supra,* 79 Cal.App. 685, 696.) Upon the making of an appropriate order by this court, based upon and in approval of said stipulation, there will remain no sound reason for reversing the judgment.

It is therefore ordered that the stipulation, filed herein on behalf of Jefferson D. Caruthers, by Louis A. Ghiotto, guardian of his person and estate, be approved; that pursuant to said stipulation said Jefferson D. Caruthers be made and brought in as a party to the above-entitled action, and that he be bound by the judgment heretofore entered in the same manner as though he had been named as a party at the commencement of the action and had appeared throughout the proceedings in the trial court by a general guardian or a guardian *ad litem.* The appeal from the order denying defendant's motion for a new trial is dismissed. The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied May 16, 1949.